## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SOUTHWEST STAINLESS, LP, and HD SUPPLY, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 07-CV-334-CVE-TLW |
| JOHN R. SAPPINGTON, WILLIAM B. EMMER, RONALD L. SIEGENTHALER, and ROLLED ALLOYS, INC, | ) ) ) ) | |
| Defendants. | ) ) | |

### REPORT AND RECOMMENDATION

This case is before the undersigned United States Magistrate Judge for report and recommendation on plaintiffs' Motion For Award of Attorneys' Fees and Nontaxable Costs (Dkt. # 161).

### PROCEDURAL STATUS

Judgment was entered on August 1, 2008. (Dkt. # 159). The District Court determined that plaintiffs were "prevailing parties" and granted them leave to seek reasonable attorney fees and costs pursuant to Fed. R. Civ. P. 54(d). (Dkt. # 158 at 56). On February 20, 2009, the undersigned conducted a hearing (Dkt. # 211) and, subsequently, issued a Report and Recommendation. (Dkt. # 220). On September 21, 2009, the Tenth Circuit issued a Decision affirming the Judgment, except with respect to one of plaintiffs' claims. Based on the Tenth Circuit's Decision, the defendant filed a Motion to Reconsider the original Report and Recommendation. The District Court granted the motion and recommitted the Report and Recommendation to the undersigned for reconsideration in light of the Tenth Circuit Decision. (Dkt. # 226). On January 21, 2010, the undersigned conducted a second hearing. (Dkt. # 250).

## CASE HISTORY

Plaintiff Southwest Stainless, LP ("Southwest") and defendant Rolled Alloys, Inc. ("Rolled Alloys") are wholesale suppliers and competitors in steel products.   (Dkt. # 115 at 3).   Southwest is a wholly-owned subsidiary of plaintiff HD Supply, Inc.  (Dkt. # 2 at 2).   Defendants John Sappington, William Emmer, and Ronald Siegenthaler are former partners who, for fifteen years, owned a company engaged in the steel products industry before selling the company to HD Supply.  (Dkt. # 115 at 1).   As part of the sale, an Acquisition Agreement was executed by Sappington, Emmer, and Siegenthaler; Employment Agreements were executed by Sappington and Emmer; a Consulting Agreement was executed by Siegenthaler; and Noncompetition Agreements were executed by Siegenthaler, Sappington, and Emmer.   Id. at 1-2.   In exchange, the individual defendants received approximately $21 million in compensation and future earnings, including guaranteed employment for Sappington and Emmer for at least three years. (Dkt. # 69 at 3).   Sappington and Emmer remained employed with plaintiffs for approximately nine years, after which Sappington, Emmer, and Siegenthaler joined defendant Rolled Alloys. (Dkt. # 115 at 3).   This lawsuit followed.

Plaintiffs filed their Complaint on June 14, 2007.  (Dkt. # 2).   On September 20, 2007, plaintiffs simultaneously filed a Motion to Amend their Complaint and an Amended Complaint. (Dkt. ## 51, 52).   The District Court admonished plaintiffs for filing the Amended Complaint before the Motion to Amend was ruled upon.  (Dkt. # 57).   On November 9, 2007, the District Court granted plaintiffs leave to substitute the Amended Complaint with a Second Amended Complaint.  (Dkt. # 67).   In the Second Amended Complaint, plaintiffs alleged claims for:

1. breach of the Employment Agreements and breach of the Noncompetition Agreements against Sappington and Emmer, (Dkt. #69 at 10);

2

2. breach of the Acquisition Agreements against Siengenthaler, Sappington, and Emmer, id. at 11;

3. interference with business relations against Sappington and Emmer, id.;

4. breach of fiduciary duty of loyalty against Sappington and Emmer, id. at 13;

5. interference with contractual relations against Siegenthaler and Rolled Alloys, (Dkt. # 2 at 8-11); and

6. misappropriation of trade secrets against Siegenthaler, Sappington, Emmer and Rolled Alloys.   (Dkt. # 69).

Having failed to include a notation for "Jury Demand" in the Complaint, even after being advised of the defect by the Court Clerk, plaintiffs sought to add a "Jury Demand" in the second paragraph of their Amended Complaint.  (Dkt. # 68 at 2).  The District Court rejected plaintiffs' jury demand, and the case remained on the non-jury docket.   (Dkt. # 68 at 7).

Next, plaintiffs filed a motion to compel a second deposition of defendant Siegenthaler, claiming his additional testimony was necessary after adding him as a new party in the Second Amended Complaint.  (Dkt. # 77).  Plaintiffs' motion was denied on January 16, 2008.  (Dkt. # 79).

On February 14, 2008, defendants filed a motion for summary judgment on all six counts in the Second Amended Complaint.  (Dkt. # 80).  In their motion, defendants challenged the application of the Florida choice of law provision in the Acquisition Agreement, the enforceability of the seven state non-compete restriction contained in the Noncompetition Agreements, and plaintiffs' claim for damages.  Id.  One day later, plaintiffs filed a motion for partial summary judgment on their interference with contractual relations claim against defendants Siegenthaler and Rolled Alloys.  (Dkt. # 82).  Plaintiffs then filed a motion for preliminary injunction against Sappington and Emmer to enjoin them from disclosing trade secrets, soliciting employees to work

for Rolled Alloys, and from soliciting business from plaintiffs' customers in Missouri, Texas, Oklahoma, Tennessee, Louisiana, Alabama, and Florida.   (Dkt. # 84 at 1-2).   The District Court consolidated plaintiffs' motion for preliminary injunction with a trial on the merits.   (Dkt. # 85).

In ruling on the summary judgment motions, the District Court agreed with defendants that the Florida choice of law provision and the seven-state non-compete restrictions were unenforceable.   (Dkt. # 136).   The District Court also granted summary judgment in favor of defendants on plaintiffs' claims for breach of the Acquisition Agreement and breach of the Employment Agreements.   Finding factual disputes, the District Court denied defendants' motion on plaintiffs' remaining claims and denied plaintiffs' motion for partial summary judgment.   (Dkt. # 136 at 12-17).

The day after the District Court's rulings on the summary judgment motions, the Magistrate Judge granted defendants' motion to exclude plaintiffs' expert witness from testifying at trial, because plaintiffs failed to provide defendants with a copy of their expert's written report as required by Fed. R. Civ. P. 26(a)(2)(B).[1]   (Dkt. # 137).   Plaintiffs appealed the Magistrate Judge's decision, objecting to the exclusion of their expert witness, and seeking an enlargement of the time for discovery, a continuance of the trial, or in the alternative to bifurcate the trial as to liability and damages.   (Dkt. # 152).   The District Court affirmed the Magistrate Judge and denied plaintiffs' motions.   (Dkt. # 144 at 12).

---

[1]   The Order states, "In summary, Plaintiffs will not be permitted to present the testimony of their expert witness, Dr. Seaman, because:  Plaintiffs have not provided an expert witness report; Plaintiffs have failed to adhere to the Court's deadlines in producing an expert witness report; Plaintiffs did not request the Court to extend the deadline for producing the expert report or file a motion to compel discovery; Defendants did not agree to the late filing of an expert witness report; there are no equitable reasons to permit the testimony; and providing an expert witness report at this late date would impact the parties' ability to proceed to trial as scheduled."   (Dkt. # 137 at 4).

The case proceeded to a three day non-jury trial (April 28-30, 2008).   The District Court gave the parties twenty days following receipt of the trial transcript to file proposed findings of fact and conclusions of law.   (Dkt. # 153 at 119).   Plaintiffs' proposed findings were 93 pages.   (Dkt. # 156).   Defendants' proposed findings were 39 pages.   (Dkt. # 155).   On August 1, 2008, the District Court filed its Findings of Fact and Conclusions of Law, and the Judgment.   (Dkt. ## 158, 159).   Judgment was entered against Sappington and Emmer on plaintiffs' claims for breach of the Non-Competition Agreements; against Sappington on plaintiffs' claim for breach of fiduciary duty of loyalty; against Siegenthaler and Rolled Alloys on plaintiffs' claim for interference with contractual relations; and against Sappington and Rolled Alloys on plaintiffs' claim for misappropriation of trade secrets.   (Dkt. # 159).   Money damages were entered in plaintiffs' favor in the amount of $62,580.00 (Dkt. # 159 at 3) as follows: one hundred and eighty dollars ($180) from Emmer, Siegenthaler, and Rolled Alloys, jointly and severally; thirty-one thousand two hundred dollars ($31,200) from Sappington, Siegenthaler, and Rolled Alloys, jointly and severally; and thirty-one thousand two hundred dollars ($31,200) from Sappington and Rolled Alloys, jointly and severally.   Plaintiffs had asked the court for a total of $2,359,313.00 in money damages.[2]   (Dkt. # 156 at 91).   The District Court also enjoined defendants Sappington and Emmer for one year from engaging in any competing business in Tulsa County and those counties contiguous to Tulsa County (a total of 8 counties) (Dkt. # 159 at 3), rather than the seven state

---

[2]   Plaintiffs sought $1,809,480.00 against defendants Siegenthaler, Sappington, Emmer, and Rolled Alloys for lost profits on their interference claims and damages related to misappropriation of trade secrets, $532,333.00 against defendant Sappington for breach of fiduciary duty, and $17,500.00 against defendant Emmer for breach of fiduciary duty. (Dkt. # 156 at 91).

geographic area requested.   (Dkt. # 84 at 2).   Thus, although plaintiffs are prevailing parties, they received far less than they sought.[3]

As to the remaining claims, judgment was entered in favor of defendants Sappington and Emmer on plaintiffs' claim for breach of the Employment Agreements, in favor of defendants Siegenthaler, Sappington, and Emmer on plaintiffs' claim for breach of the Acquisition Agreement, in favor of defendants Sappington and Emmer on plaintiffs' claim for interference with business relations, in favor of defendant Emmer on plaintiffs' claim for breach of fiduciary duty of loyalty, and in favor of defendants Siegenthaler and Emmer on plaintiffs' claim for misappropriation of trade secrets.   (Dkt. # 159 at 1-2).

On September 21, 2009, the Tenth Circuit issued its Decision, which affirmed the district court's Judgment except as to plaintiffs' trade secret claim.   (Dkt. #224).   The Tenth Circuit reversed the trade secret claim and directed that judgment be entered in favor of defendants.   Id. On October 16, 2009, the District Court entered its Amended Final Judgment and Order for Permanent Injunction, consistent with the Tenth Circuit's Decision.   (Dkt. # 231).   The Amended Judgment was different from the original Judgment only in that it entered judgment in favor of Sappington and Rolled Alloys on plaintiffs' trade secret claims and granted plaintiffs the following monetary relief:   (1) one hundred and eighty dollars ($180) from Emmer, Siegenthaler, and Rolled Alloys, jointly and severally; and (2) thirty-one thousand two hundred dollars ($31,200) from Sappington, Siegenthaler, and Rolled Alloys, Inc., jointly and severally.   Id.

---

[3]   The prevailing party is the party "who has affirmative judgment rendered in his favor at the conclusion of the entire case."   Murray v. First Marine Ins. Co., 29 Fed. Appx. 503 (10th Cir. 2002).

## Complexity of the Case

Although plaintiffs contend that this litigation was complex, the record reflects otherwise. The case involved four individual defendants with similar factual allegations against each.   (Dkt. # 69).   Plaintiffs do not dispute that their claims share common components and center around the same set of facts:   "Plaintiffs' claims boil down to this:   Sappington and Emmer left the company they had sold to HD Supply to work for a competitor in violation of their covenants not to do so; the competitor was aware of those agreements, and took and used HD Supply's confidential information."  (Dkt. # 162 at 9).   In addition, plaintiffs' own carelessness simplified the case when they failed to demand a jury and failed to provide an expert report for their damages expert. (Dkt. ## 68, 137).

Defendants asserted two primary affirmative defenses, that the employment contracts had expired by their terms and that the non-competition agreement was overly broad and unenforceable.   (Dkt. # 21 at 5-6).   When defendants prevailed on the first defense, the case was further simplified.   (Dkt. # 136).   Plaintiffs' remaining claims raised factual issues; however, those issues were straightforward.   The number of depositions was relatively small; plaintiffs' only motion to compel was denied; plaintiffs' motion for additional discovery was denied; plaintiffs' motion to continue the trial was denied; plaintiffs' motion to bifurcate the trial was denied (Dkt. # 144); and, from complaint to judgment, the case was concluded in less than fourteen months, including a trial that lasted less than three days and had only eleven witnesses.   (Dkt. ## 150, 151, 152 and 153).

## Plaintiffs' Fee Application

On August 15, 2008, plaintiffs timely filed a "Motion For Award of Attorneys' Fees and Nontaxable Costs," along with four supporting affidavits (Dkt. ## 165, 166, 167 and 168), daily

billing records (Dkt. # 161, Exs. B, D, and E), and summary exhibits (Dkt. #161, Exs. A and C).

Plaintiffs motion sought $525,756.26 for the legal work of twenty-two people - including two local

attorneys, seven partners, six associates, one summer intern and six paralegals - who office in

Oklahoma, Florida, Arizona, and Georgia.   (Dkt. # 161, Ex. A).   Plaintiffs also sought

$20,012.92 in non-taxable costs.   (Dkt.# 161, Ex. F).[4]   Plaintiffs claim they voluntarily reduced

their requested fee by $12,398.74, eliminating some of the hours incurred in their unsuccessful

attempt to overturn the Magistrate Judge's decision to exclude their expert witness.   (Dkt. # 161 at

3).   After defendants sought an "across-the-board reduction" for "counsel's practice of

block-billing" (Dkt. # 174), plaintiffs filed twelve additional affidavits, attempting to reconstruct

their time sheets by itemizing their hourly billings "to the best of their recollection."   (Dkt. ##

183-194).   Plaintiffs also voluntarily eliminated an additional $2,017.20, admitting to billing

errors raised in defendants' response.   (Dkt. # 182 at 2).   On October 23, 2008, without first

seeking leave of court, plaintiffs filed a supplement to their motion for fees, seeking an additional

$94,687.00, which includes legal fees for services post-dating the initial attorney fees application.[5]

(Dkt. # 202).   The undersigned held a hearing on February 20, 2009, and the parties were directed

to brief the issue of whether attorney fees are recoverable for legal work performed on non-fee

bearing claims, as addressed by the Tenth Circuit in Combs v. Shelter Mutual Insurance Co., 551

F.3d 991 (10th Cir. 2008).   (Dkt. # 211).   Plaintiffs' counsel was also admonished for filing the

---

[4]   Plaintiffs' non-taxable costs include $2,417.28 in external duplicating; $2,175.20 in internal duplicating; $1,405.50 in computerized legal research; $3,186.58 in overnight delivery charges; $10,826.95 in attorney and paralegal travel expenses and $1.41 in long distance telephone charges. (Dkt. # 161 at 4).

[5]   Plaintiffs' supplemental fees include:   $1,786.30 for discovery; $73,647.30 for reviewing defendants' response brief and preparing a reply brief and supplemental affidavits; $720.00 for settlement; $6,963.10 for enforcement of judgment; and $11,570.30 for preparing a supplemental document.   (Dkt. ## 202 and 204, Ex. 1).

8

supplemental motion for attorney fees without seeking leave of court, in violation of Local Rule 7.2(h).   On February 25, 2009, plaintiffs withdrew their supplemental motion for attorney fees and sought leave to file a "Substituted Supplement to Motion for Award of Attorney Fees."   (Dkt. # 214).   Through the Substituted Supplement, plaintiffs sought leave to increase their fee application, for fees incurred through February 20, 2009, to $634,029.36, representing an additional $110,290.30 over the initial request.   (Dkt. # 214).   The additional fees are primarily related to the preparation of plaintiffs' fee application, attendance at the attorney fee hearing, preparation of the supplement and substituted supplement, the errata/corrections, additional exhibits and affidavits, additional research and analysis, and re-construction of plaintiffs' billing records.[6]   (Dkt. # 214, Ex. 1).   Plaintiffs further advised that they intended to file additional supplements as they monitored defendants' compliance with the one-year post-trial injunction. (Dkt. # 214 at 2).   On November 20, 2009, plaintiffs did so, filing a Motion for Leave to File Second Supplement to Motion for Award of Attorneys' Fees and Non-Taxable Costs.   (Dkt. # 237).   In their November 20 motion, plaintiffs sought leave to supplement their existing fee request with a request for an additional $49,473.60.   Id.   Plaintiffs seek this additional amount for fees incurred on and after February 20, 2009.   These fees were incurred "preparing, serving, and reviewing the responses to subpoenas to monitor Defendants' compliance with the injunction and in litigating their fee application."   Id.   Defendants objected to the court granting plaintiffs' numerous post-application supplements as being untimely and unreliable.   (Dkt. ## 205, 218 and 219).   On January 21, 2010, the undersigned granted plaintiffs' Motion to File the Substituted

---

[6] Plaintiffs also sought leave to file a third supplement to "Supplement Contemporaneous Time Records" (Dkt. # 215) to further reconstruct their billings to apportion time related to fee-bearing and non-fee-bearing claims, although plaintiffs deny there is any authority requiring such apportionment.   (Dkt. # 215 at 2).

Supplement and plaintiffs' Third Motion to Supplement.   (Dkt. # 250).

## ANALYSIS

### A.      Applicable Law and Basis for Attorney Fees Award

In diversity cases, attorney fees are substantive and are determined by the forum state's law.   Oulds v. Principal Mutual Life Ins. Co., 6 F.3d 1431, 1445 (10th Cir. 1993).   Thus, Oklahoma law governs plaintiffs' fee request.[7]

Oklahoma follows the American Rule, which requires each litigant to pay its own attorney fees unless otherwise provided by statute or contract.   State ex rel. Dept. of Transp. v. Norman Indus. Development Corp., 41 P.3d 960, 962 (Okla. 2001).

Plaintiffs originally sought fees from Sappington and Emmer under the Noncompetition Agreements and from Sappington and Rolled Alloys under the Oklahoma Uniform Trade Secrets Act.   Because the Tenth Circuit reversed plaintiff's judgment on their trade secret claim, plaintiffs are no longer entitled to fees under the Trade Secrets Act.

The Noncompetition Agreements provide:

In the event that (plaintiffs) institute() litigation to enforce its rights or remedies under this Agreement, Hughes shall be entitled to receive an award from Stockholder of its reasonable attorneys' fees and costs incurred in connection with such litigation.   The foregoing shall include reasonable attorneys' fees and costs (including paralegals' fees) incurred at trial, on any appeal and in any proceeding in bankruptcy.

(Dkt. # 69, Ex. A).   Setting aside defendants' argument that plaintiffs abandoned their claim for attorney fees, see infra at 12-13, there is no dispute that plaintiffs are entitled to their "reasonable" attorney fees under this contractual provision.   However, any fee award in favor of plaintiffs will

---

[7]   Neither party disputes that Oklahoma law applies.

be against defendants Sappington and Emmer only, since they were the only defendants subject to plaintiffs' Noncompetition Agreement claims.

## B.     Calculation of Attorney Fees

The Oklahoma Supreme Court has outlined a two-step procedure for arriving at a reasonable attorney fee:  (1) determine the lodestar fee, which is the reasonable hourly compensation on an "hours times rate basis" (see supra at 8-9),[8] and (2) enhance or reduce the lodestar fee, if warranted, by adding or subtracting an amount arrived at by applying the factors set forth in Burk.[9]  Morgan v. Galilean Health Enterprises, Inc., 977 P.2d 357, 364 (Okla. 1998); Arkoma Gas Co. v. Otis Engineering Corp., 849 P.2d 392, 394 (Okla. 1993) (affirming trial court's use of Burk factors to reduce award of attorney fees); Southwestern Bell Telephone Co. v. Parker Pest Control, Inc., 737 P.2d 1186, 1189 (Okla. 1987); Staton v. Guarantee State Bank, 178 P.3d 186, 189 (Okla.Civ.App. 2007) (noting that use of time as a sole standard is of dubious value, thereby authorizing the court to enhance or reduce the hours based on the factors set forth in Burk). The Burk factors are:

1. time and labor required,
2. the novelty and difficulty of the issues,
3. the skill required to perform the legal service properly,
4. the preclusion of other employment due to acceptance of the case,
5. the customary fee,
6. whether the fee was fixed or contingent,
7. the time limitations imposed by the client or the circumstances,

---

[8]  In calculating the lodestar fee, the court is to determine the number of hours reasonably expended on the case and multiply that by a reasonable hourly rate.   Spencer v. Oklahoma Gas & Elec. Co., 171 P.3d 890, 897 (Okla. 2007).

[9] At the second step, the court is also free to utilize the factors set out in Rule 1.5 of the Oklahoma Rules of Professional Conduct or those factors "utilized by federal courts."   Morgan v. Galilean Health Enterprises, Inc., 977 P.2d 357, 364 (Okla. 1998).

8.   the amount involved and the results obtained,

9.   the experience, reputation and ability of the attorneys,

10. the undesirability of the case,

11. the nature and length of the professional relationship with the client, and

12. the awards in similar cases.

Burk, 598 P.2d at 661.   See also Harolds Stores, Inc. v. Dillard Dept. Stores, Inc., 82 F.3d 1533, 1553 (10th Cir. 1996).

Finally, although the determination of reasonableness and the amount of the fee award are generally left to the sound discretion of the district court, Arkla Energy Resources v. Roye Realty and Developing, Inc., 9 F.3d 855, 865 (10th Cir. 1993), the Oklahoma Supreme Court requires that an attorney fees award bear some reasonable relationship to the amount in controversy.   Id.; Morgan v. Galilean Health Enterprises, Inc., 977 P.2d 357, 364 (Okla. 1998); Southwestern Bell Telephone Co., 737 P.2d at 1189.

Defendants have stipulated to the reasonableness of plaintiffs' hourly rates.   (Dkt. # 173). Therefore, plaintiffs only have the burden of demonstrating that the number of hours for which they seek recovery was reasonable and necessary.   Oliver's Sports Center v. National Standard Ins. Co., 615 P.2d 291, 295 (Okla. 1980).

**C.**   **Reasonableness of the Hours Requested in Plaintiffs' Initial Motion for Attorney Fees**

Plaintiffs' original Motion for Attorney Fees seeks fees in the amount of $525,756.26, less $2,017.20, the amount plaintiffs voluntarily eliminated after reviewing defendants' response. (Dkt. ## 161, 181-2).

In response to plaintiffs' request, defendants first state that plaintiffs' fee application should be denied in its entirety, arguing that plaintiffs abandoned their right to recover fees by

12

failing to include a request in the Joint Pretrial Order.   (Dkt. # 174 at 2).   This argument is

unpersuasive.   Defendants have cited no authority that bars the recovery of attorney fees in a

situation similar to the one presented here.   Moreover, the District Court in its Opinion and Order

expressly determined that plaintiffs are entitled to attorney fees (Dkt. # 158), and defendants made

no objection to this determination.

In the alternative, Defendants seek a reduction of the lodestar calculation based on the

following general objections:

1.  unreasonableness of the fees due to the misleading nature of the fee application
    (Dkt. # 174 at 3);

2.  failure to distinguish and apportion hours between fee bearing and non-fee
    bearing claims (Dkt. # 174 at 6, 8);

3.  duplicative work, inappropriate staffing, and excessive billing (Dkt. # 174 at 9,
    12);

4.  work arising out of problems of plaintiffs' own making (Dkt. # 174 at 16);

5.  block billing and lack of detailed billing (Dkt. # 174 at 6, 18-19);

6.  the lack of a reasonable relationship between the amount in controversy and the
    amount recovered (Dkt. # 174 at 20); and

7.  failure to satisfy the factors set forth in <u>Burk</u>.   (Dkt. # 174 at 22).

Defendants also argue that the following specifically identified hours should be stricken:

1.  any time related to plaintiffs' excluded expert witness (Dkt. # 174 at 4);

2.  any time billed prior to the filing of the Second Amended Complaint (Dkt. #
    174 at 6);

3.  any time related to plaintiffs' aborted effort to obtain a preliminary injunction
    (Dkt. # 174 at 6); and

4.  any time related to forum shopping and exploring whether to terminate and
    re-file the lawsuit in another venue after receiving unfavorable rulings (Dkt. #
    174 at 19).

Finally, defendants challenge plaintiffs' request for "non-taxable costs."   (Dkt. # 174 at 24).

After considering the parties' arguments and specifically reviewing each time entry that provides the basis for plaintiffs' request, the undersigned has concluded that a number of issues, including many identified by defendants, weigh heavily against awarding plaintiffs the full amount of the fees they are requesting.   First, plaintiffs seek fees for time spent on non-fee bearing claims. Second, there was a lack of adequate coordination and communication among the twenty-two timekeepers, causing a substantial duplication of work and excessive fees.   Third, plaintiffs' billing records show an excessive number of attorneys and legal staff, excessive duplication of work, excessive billing, and on numerous occasions, carelessness which increased plaintiffs' billings in order to rectify problems of plaintiffs' own creation.   This carelessness is evident in the presentation of their case to the court and in preparing their fee application.   "Justice should be administered economically, efficiently, and expeditiously.   The attorney's fee is, therefore, a very important factor in the administration of justice, and if it is not determined with proper relation to that fact it results in a species of social malpractice that undermines the confidence of the public in the bench and the bar."   Southwestern Bell, 737 P.2d at 1189.   Fourth, plaintiffs' counsel engaged in "block billing," making it difficult, if not impossible in many instances, to determine how much time was expended on each claim and each individual task.[10]

In taking into consideration the foregoing, the remainder of Section C. of this Report and Recommendation does the following:   (1) explains the method used for reducing plaintiffs' initial fee request to account for duplication of work and excessive and unnecessary time; (2) applies this method to plaintiffs' fee application; (3) addresses plaintiffs' fee request to recover time related to

---

[10]   Block billing is explained infra at 26.

its expert witness; (4) addresses the appropriateness of plaintiffs' fee request to recover attorney fees incurred on non-fee bearing claims (concluding that such a request is inappropriate); (5) discounts plaintiffs' fee award to account for plaintiffs' non-fee bearing claims; and (6) discounts plaintiffs' fee award to account for block billing.[11]   Those sections after Section C. address plaintiffs' supplementations, along with plaintiffs' request for non-taxable costs.

**1. Method Used to Reduce Plaintiffs' Fee Request to Account for Duplication of Work and Excessive and Unnecessary Time**

Plaintiffs' time sheets show excessive duplication of legal work among timekeepers.   "The term 'duplication' in the context of attorney fees requests usually refers to situations where more than the necessary number of lawyers are present for a hearing or proceeding or when multiple lawyers do the same task." Robinson v. City of Edmond, 160 F.3d 1275, 1284 (10th Cir. 1998). "The more lawyers representing a side of the litigation, the greater the likelihood will be for duplication of services."  Id. (citing Ramos v. Lamm, 713 F.2d 546, 554 (10th Cir. 1983)). Moreover, "(w)hen more than one attorney represents the prevailing party 'fees awarded should reflect the efforts of all, at least to the extent that the time reported does not reflect duplication of effort or work that should be performed by non-lawyers'. . . .   However, if multiple representation results in inefficiency or duplication of effort, the court may reduce an attorney fee request accordingly." ONG v. Apache, 355 F.Supp.2d 1246, 1258 (N.D.Okla. 2004).   Defendants provided several examples of duplication of work, with footnotes to specific citations of the plaintiffs' billing records in support of their objection.  (Dkt. # 174, n.9-14).  The undersigned

---

[11]   A number of defendants' objections are not specifically addressed herein, although each has been carefully considered.   Those objections that are not addressed did not warrant further discussion, since the method utilized by the undersigned reaches an attorney fee award that is reasonable under the controlling law.

has reviewed each of those citations and agrees that these examples generally show duplication of work among timekeepers.

There is, however, no requirement for the court to identify each hour reasonably or unreasonably expended by each timekeeper, nor is there any requirement that the court announce what hours are permitted for each legal task.   See Case v. Unified School District No. 233, 157 F.3d 1243 (10th Cir. 1998).   "Instead, a general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use."   Id. at 1250.   Moreover, identifying each hour reasonably expended on plaintiffs' claims would be impossible given plaintiffs' counsel's use of block billing.   See infra at 26.   Therefore, in order to calculate a reasonable number while at the same time eliminating duplicative, excessive, and unnecessary time, the undersigned has evaluated the work performed by each individual timekeeper to determine, with respect to each, whether the timekeeper was reasonably necessary to the prosecution of plaintiffs' claims.   If not, then the undersigned has recommended eliminating all time billed by that timekeeper.   By using this approach, certain specific time entries that may have been reasonably necessary for the prosecution of plaintiffs' claims have been eliminated.   However, at least an equal number of excessive or unnecessary hours billed by those timekeepers whose time has not been eliminated has been allowed. Although this method is not perfect, the undersigned concludes that it is a reasonable method for eliminating time that should not reasonably be shifted to defendants Sappington and Emmer.

## 2.   Timekeepers That Should be Eliminated from Plaintiffs' Fee Request

In plaintiffs' initial Motion, they seek reimbursement for the use of twenty-two timekeepers.   Based on a detailed review of each timekeeper's work, the undersigned recommends a reduction of plaintiffs' fee request by striking all of the time billed by eleven

timekeepers.   The reasoning, with respect to each such timekeeper is detailed in the following paragraphs.   The timekeepers approved by this recommendation are:   James R. Polan (local counsel), Ralph J. Zatzkis (partner), Dinita L. James (partner-trial attorney), William E. Grob (partner-trial attorney), Lori R. Benton (partner), Amy R. Harrison (associate), Kylie B. Crawford (associate), Lindsay Connor O'Brien (associate), E. Marie Hickman (paralegal), Shana M. Battles (paralegal), and Erin C. Andler (paralegal).   (Dkt. # 161, Ex. A). [12]   The undersigned recommends striking the hours of the remaining eleven timekeepers, including one local counsel, three partners, three associates, three paralegals, and one summer intern.[13]

The time of Tulsa attorney Donald M. Bingham (DMB), a shareholder, should be eliminated as excessive and duplicative of hours billed by Tulsa attorney James R. Polan, also a shareholder.[14]   In light of the excessive number of personnel utilized within lead counsel's firm, the services of one local counsel in this case was sufficient.   The time of Florida attorney Dawn

---

[12]   This reduction allows plaintiffs the service of one local counsel, four partner-level attorneys (including both trial lawyers), three associates and three paralegals, more than enough legal personnel for this relatively straight-forward matter.

[13]   The purpose of eliminating certain timekeepers is solely to address excessive and duplicative billing on all claims.   The undersigned addresses block billing and time sought on non-fee bearing claims below.

[14]   The billing records of these two shareholders in the law firm of Riggs, Abney, Neal, Turpen, Orbison & Lewis are replete with instances of excessive and duplicative billing (in part due to lead counsel's use of such an unreasonable number of timekeepers).   The following is one example:

| | |
|---|---|
| 6/13/07 | DMB   Two staff consultations with James R. Polan; Telephone conference with Bill Grob; Revise draft of Complaint; E-mail correspondence. |
| 6/13/07 | JRP     Consult with Donald M. Bingham re: new case, Receive and review draft Complaint; Consult with Donald M. Bingham re: same; E-mail to counsel re: suggested revisions; Receive and review emails to/from co-counsel, finalize and file Complaint and related documents; Send/receive e-mails to co-counsel re: filing. |

(Dkt. # 167).

Silver-Nixon (DSN), a partner, should be eliminated.   Ms. Nixon's work was duplicative of Florida attorney William Grob (WEG), a partner.[15]   The time of Atlanta, Georgia partner Jeffrey D. Mokotoff (JDM) should be eliminated.   Mr. Mokotoff assisted with the choice of law arguments "in anticipation of the filing of the temporary injunction hearing and in preparing the preliminary injunction brief on that issue."   (Dkt. # 168 at 2).   Mr. Mokotoff billed 16.3 hours for this work, (Dkt. # 195, Ex. A), and performed no other substantive legal work in this case (as shown in the summaries provided).   His hours should be eliminated as excessive, because it would have been far more cost efficient for an associate or partner familiar with the facts and circumstances of the case to perform this limited work.   More importantly, several other attorneys billed hours for work on this issue.   Another partner was not necessary.

Time billed by Florida attorney M. Susan Sacco (MSS), a partner, should be eliminated. Ms. Sacco performed a single task.   She reviewed, analyzed, researched and prepared the appeal of the Magistrate Judge's order striking plaintiffs' expert witness and denying plaintiffs' motion to compel.   (Dkt. # 193).   Ms. Sacco billed 11.9 hours for this service.   (Dkt. # 195, Ex. A).   Her legal work resulted from plaintiffs' failure to comply with proper pretrial procedures and is

---

[15]   Ms. Nixon, a partner, billed frequently for reviewing the legal work of Mr. Grob who was also a partner.   The following are examples:

| | | |
|---|---|---|
| 2/14/08 | DSN | Review, analysis and revisions to WEG draft motion for summary judgment. |
| 3/13/08 | DSN | Review and analysis of finalized responses in opposition to motion for partial summary judgment and conference with WEG regarding same. |
| 4/03/08 | DSN | Review court's order and strategy conference with WEG regarding potential issues. |
| 4/14/08 | DSN | Review, analysis and revisions to WEG draft reply to response to objections to magistrate's order. |

(Dkt. 191).

remedial work necessary only because of counsel's own mistake.   Ms. Sacco also billed 4.4 hours for trial preparation, but the specifics of the work she performed are not clear from the summaries. (Dkt. # 195, Ex. A).   Also, as with attorney Mokotoff, it would have been more cost efficient for an associate or partner familiar with the facts and circumstances of the case to perform this limited work.

Time billed by Phoenix attorney Sonya K. Parrish-Boun (SKPB), an associate, should be eliminated.   Ms. Boun assisted Ms. Sacco in researching objections to the exclusion of plaintiffs' expert witness and strategic options available after the expert was excluded.   (Dkt. # 166 at 3). Time billed by Phoenix attorney Bradley R. Hall (BRH), an associate, should be eliminated.   The chart indicates that Mr. Hall billed 10.3 hours of work on discovery, but no further explanation was provided in the summary to permit a meaningful review of the reasonableness of his services. (Dkt. # 168 at 3).   "It is the applicant's responsibility to provide the court with contemporaneous billing records containing sufficient detail to allow the Court to determine if the fees requested were reasonable and necessary."   ONG, 355 F.Supp.2d at 1258.   Time billed by Phoenix attorney Steven Coleman (SBC), an associate, should be eliminated.   Mr. Coleman was assigned the single task of conducting research on specific damages for preparation of plaintiffs' proposed findings of fact and conclusions of law.   (Dkt. # 166 at 3).   Plaintiffs' chart does not indicate any other legal work performed by Mr. Coleman.   (Dkt. # 195, Ex. A).   Time billed by J. Thomas Allen (JTA), a third year law student at the University of Arizona, should be eliminated.   As a summer intern, Mr. Allen conducted research on damages for inclusion in plaintiffs' proposed findings of fact and conclusions of law.   This work could have been performed more efficiently by an attorney that was more involved in this case.   Certainly, in a case such as this one, assigning a single task to

multiple associates (as opposed to multiple tasks to a single associate) generally results in inefficiencies and duplication of work.

Plaintiffs listed services for six paralegals.  (Dkt. # 161, Ex. A).  Rebecca M. Bastian (RMB) billed .5 hours for discovery; Heidi S. Daniels (HSD) billed 24.6 hours for discovery; and Brandye L. Fenn (BLF) billed 4.4 hours for motion practice and 5.2 hours for trial preparation. (Dkt. # 195, Ex. A).  Plaintiffs' chart indicates that the bulk of paralegal services were performed by three other paralegals:  E. Marie Hickman, Shana M. Battles, and Erin C. Andler who were active throughout the litigation.  (Dkt. # 195, Ex. A).  Based on a review of each paralegal's time entries, the undersigned finds that the use of six paralegals in this particular case was excessive and inefficient and that the time incurred by the first three paralegals included inefficiencies that would not have been present had the work been performed by the paralegals who were more active in this litigation.   Thus, for the same reasons discussed above with respect to the attorneys, the undersigned recommends eliminating the time billed by paralegals Bastian, Daniels and Fenn.

### 3.  Plaintiffs' Damages Expert

Plaintiffs identified 75.1 hours billed by six timekeepers for "expert discovery."  (Dkt. # 195, Ex. A).  Defendants challenge these hours because plaintiffs' damages expert was excluded from testifying at trial.   The undersigned has already noted that plaintiffs' expert on damages was excluded from trial because of plaintiffs' own carelessness.   Additionally, the managing partner for plaintiffs' law firm confirmed that plaintiffs' recovery of damages was adversely effected by the exclusion of their expert witness:

> The magistrate judge's order of April 2, 2008 excluding Plaintiff's (sic) damages expert witness and relieving Defendants of any obligation to continue the production to which they previously had agreed of their records of sales to Plaintiffs' established customers had a serious detrimental effect on Plaintiffs' ability to prove the full extent of their damages at trial.   After that ruling, I was

involved in advising the clients on strategy options available, including the possibility of taking a voluntary dismissal of the action and refiling the claims in another forum.

Affidavit of Dinita L. James (Dkt. # 166 at 4).  Following trial, the District Court held that plaintiffs were not entitled to general lost profit damages from Sappington and Emmer.[16]  (Dkt. # 158 at 28).  Accordingly, as part of the consideration to arrive at a reasonable attorney fee in this case, the undersigned concludes that services performed for plaintiffs' "expert discovery" should not be imposed on defendants.  Thus, 72 hours shown for "expert discovery" should be stricken.[17]

### 4.  Apportionment Between Fee Bearing and Non-Fee Bearing Claims

The Tenth Circuit has addressed the apportionment of attorney fees between fee bearing and non-fee bearing claims under Oklahoma law in a series of two published and two unpublished opinions, beginning with Transpower Constructors v. Grand River Dam Authority, 905 F.2d 1413 (10th Cir. 1990) and ending with Combs v. Shelter Mutual Ins. Co., 551 F.3d 991, 1001 (10th Cir. 2008).  Between Transpower and Combs, the Tenth Circuit issued State Bank & Trust v. First State Bank of Texas, 242 F.3d 390, 2000 WL 1862690 (10th Cir. 2000) and Travelers Indemnity Co. v. Hans Lingl Anlagenbau Und Verfahrenstechnik GMBH & Co. KG, 189 Fed.Appx. 782, 2006 WL 2065069 (10th Cir. 2006), both unpublished.  These four cases are summarized below and guide the undersigned's analysis on the apportionment issue.

In Transpower, a dispute arose between a construction contractor and an owner, the two

---

[16]  The District Court explained:  "Plaintiffs failed to prove by a preponderance of the evidence that Sappington's and Emmer's employment with Rolled Alloys and/or conduct caused any of the general lost profits.  The claimed lost profits are based on sales that Rolled Alloys made, but the record contains no evidence that Metals would have made these profits had the Noncompetition Agreements not been breached." (Dkt. # 158 at 28-29).

[17]  Plaintiffs seek a total of 75.1 hours for fees related to expert discovery, of which 3.1 hours were billed by "MSS."  The undersigned has recommended that all time billed by MSS be stricken.  Thus, a deduction of only 72 hours is appropriate.

21

parties to a construction contract.   905 F.2d 1413.   The construction contractor brought a breach of contract claim against the owner and a negligence claim against the owner's construction manager, alleging that the owner had failed to timely deliver materials and provide sufficient right of way (as required by the contract) and that the construction manager had negligently administered the contract by failing to grant the contractor numerous requests for extensions.   Id. After entering judgment on a jury verdict in favor of the contractor, the trial court awarded the contractor attorney fees for the time its attorneys expended in preparing its breach of contract claim against the owner.   Id. at 1416.   The court included in its award time devoted to discovering and presenting evidence of the construction manager's negligence.   Id. at 1422-23. Although there was no basis for a fee award on the negligence claim, "[t]he [trial] court reasoned that since [the manager's] negligent acts were also [the owner's] breaches of contract, [the contractor] would have necessarily expended the time in discovering and presenting evidence of [the owner's] negligence whether or not [the manager] had been a party to the litigation."   Id. at 1423.   On appeal, the owner argued that fees were recoverable only for time expended solely on the breach of contract claim.   Id.   The Tenth Circuit disagreed, noting that "[the contractor] produced undisputed testimony that it could not have succeeded in its claims against [the owner] without proving [the manager's] negligence."   Id.

In State Bank & Trust, the plaintiff sued the defendant under Texas law to recover the amount of a cashier's check issued by the defendant.   242 F.3d 390, 2000 WL 1862690.   The defendant counterclaimed seeking to recover, under Oklahoma law, the face amount of a cashier's check issued by plaintiff and seven documentary drafts that appeared on their face to have been issued by plaintiff's customer.   Id.   The trial court granted summary judgment in favor of the plaintiff on its claims and, after a non-jury trial, entered judgment in favor of the plaintiff on all of

the defendant's counterclaims.   Id.   The trial court also awarded attorney fees to the plaintiff on

the Oklahoma law claims, not all of which were fee bearing.   Id. at *13-14.   The trial court

reasoned that the Oklahoma law claims were "inextricably intertwined" and, as a result, there was

no need to segregate fees between the fee bearing and non-fee bearing claims.[18]   Id.   In reversing

and remanding the trial court's award of attorney fees, the Tenth Circuit stated:

> Although we are sympathetic to the difficulty of segregating attorneys' fees
> between claims that are so closely related, we can find no support for an
> "inextricably intertwined" exception to the general Oklahoma rule that attorneys'
> fees can only be awarded where there is an independent statutory basis.   We
> decline to affirm an unsupported legal conclusion of state law.   We reverse the
> District Court's award of attorneys' fees to the extent it awards fees under
> Oklahoma law pursuant to the inapplicable "inextricably intertwined" doctrine.

Id. at *14.

In Travelers Indemnity Co., the plaintiff contended that the trial court erred in awarding

attorney fees to the defendant for a successful defense of various product liability claims, although

the plaintiff agreed that attorney fees were recoverable as a result of defendants' successful

defense of its breach of warranty and negligent or willful injury to property claims.   Id. at

*787-88.   The plaintiff argued that the trial court should have apportioned fees among the various

theories of liability, resulting in a reduction of the total fee award.   Id.   In affirming the fee

award, the Tenth Circuit first noted that "[t]he Oklahoma Supreme Court has held that attorney

fees must be apportioned between claims for which there is statutory authority for an award of

attorney fees and those for which there is not."   Id. at *788.   The court reasoned that such an

apportionment was not necessary, because "it is apparent that the time defendants' attorneys

devoted to the product-liability claims was necessarily incurred in defending the other claims, for

which attorney fees are authorized."   Id.

---

[18]  The trial court did apportion the plaintiff's fees to account for the plaintiff's Texas law claims.

23

Finally, in <u>Combs</u>, an insurance agent brought suit against its employee alleging various contract and tort claims related to his agency contract. <u>Id.</u> at 994. The trial court granted summary judgment in favor of plaintiff on his breach of contract and breach of the duty of good faith and fair dealing claims but granted summary judgment in favor of defendant on all remaining claims. <u>Id.</u> The trial court then awarded attorney fees to the agent on his breach of contract claims but apportioned those fees between the contract claims and the tort claims. <u>Id.</u> The Tenth Circuit, in finding that the trial court did not err in making such an apportionment, stated:

> Oklahoma strictly adheres to the American rule concerning attorney's fees. Attorney fees are not available unless (1) the opponent acts in bad faith, (2) attorney fees are authorized under a specific statute, or (3) a contract exists between the parties which governs attorney fees. Accordingly, "[i]n a case involving multiple claims where prevailing party attorney fees are authorized for only one claim, the law dictates that the court 'apportion' the fees so that attorney fees are awarded only for the claim for which there is authority to make the award."

<u>Id.</u> at 1001 (quoting <u>Tsotaddle v. Absentee Shawnee Housing Auth.</u>, 20 P.3d 153, 162 (Okla. 2000)) (citations omitted).

This series of cases makes clear that, when applying Oklahoma law to motions for attorney fees, the Tenth Circuit requires a movant's fees to be apportioned between fee bearing and non-fee bearing claims, unless the movant can establish that some or all of the fees that were incurred on the non-fee bearing claims were necessary to the prosecution or defense of the fee bearing claims, in which case an apportionment of those specific fees is not required.[19] Moreover, these cases make clear that the Tenth Circuit has expressly rejected the idea that an apportionment can be

---

[19] The burden of proof is on the party claiming attorney fees to prove entitlement and to "document[] the appropriate hours expended and hourly rates." <u>Selrahc v. Burruss</u>, 233 Fed. Appx. 819, 833, 2007 WL 1443729, *13 (10th Cir. 2007) (unpublished) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

24

avoided by a finding that fee bearing and non-fee bearing claims are "closely related" or "inextricably intertwined."

The Noncompetition Agreements are the sole basis for a fee award in this case. Thus, plaintiffs cannot recover attorney fees for legal services related to their other claims, unless plaintiffs establish that those services were necessary to their fee bearing claim under the Noncompetition Agreements.

### 5.   <u>Plaintiffs' Fees Attributable to Their Fee Bearing Claims</u>

Plaintiffs' daily time sheets are 113 pages in length, (Dkt. # 161, Exs. B, D & E), and are cumbersome. Moreover, because of block billing, it is impossible to determine how much time was spent on plaintiffs' successful fee bearing claim versus its other claims. It may be for this reason that plaintiffs have not even attempted to show that the time spent on their non-fee bearing claims was necessary to the prosecution of their fee bearing claim. Instead, plaintiffs misstate the standard and appear to attempt to shift the burden to defendants to establish that certain time was spent exclusively on non-fee bearing claims:   "time spent by an attorney on unsuccessful claims may be excluded only if the time was spent solely establishing the unsuccessful claim." (Dkt. # 162 at 4-5). Plaintiffs also take the position that:   "[w]here certain claims allow for an award of attorneys' fees but others do not, a plaintiff should not be denied an award of attorneys' fees on the claim for which attorneys' fees are not authorized if all of the claims share common components." (Dkt. # 162 at 8). These arguments are contrary to the established Tenth Circuit law discussed above, which requires the <u>movant</u> to establish that time spent on a non-fee bearing claim was "necessary" to the prosecution of the fee bearing claim; otherwise, such time is not recoverable. Plaintiffs have failed to meet this burden. The undersigned, therefore, must recommend some reasonable means of apportioning plaintiffs' fees.

Plaintiffs sought recovery under six claims and prevailed on only one fee bearing claim, which equals sixteen and two-thirds percent (16.67%) of their claims.   Since plaintiffs prevailed on one-sixth of their claims and, based on a review of plaintiffs' counsel's time entries, appear to have spent at least one-sixth of their time on the fee bearing claims, the undersigned recommends reducing the hours billed by the approved eleven timekeepers by five-sixths to account for the services performed on the non-fee bearing claims.   See United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1232 (10th Cir. 2000) (after reducing an unreasonable fee, a further percentage reduction in fees was approved to account for time spent on those claims which did not allow recovery of attorney fees).

### 6.   Block Billing

"The term 'block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks."   Robinson v. City of Edmond, 160 F.3d 1275, 1284 (10th Cir. 1998). The use of block billing is of concern because it camouflages the work a lawyer does regularly, and raises suspicion about whether all the work claimed was actually accomplished and whether it was necessary.   Id.   The Tenth Circuit requires "lawyers to keep meticulous time records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks." Id. (citing Ramos 713 F.2d at 553).   In addition, plaintiffs carry the burden to provide a reasonable basis for allocating fees between their compensable claims and their non-compensable claims. Harold Stores, 82 F.3d at 1552.   In this instance, plaintiffs' daily billing records are replete with instances of block billing that have hampered the undersigned's review of the reasonableness of plaintiffs' fee application, both because these instances have prevented a proper determination of

whether a reasonable amount of time was expended on each task and a determination as to what time was spent on fee bearing versus non-fee bearing claims.

In an effort to address defendants' block billing argument, plaintiffs filed twelve affidavits wherein each timekeeper reconstructed – to the best of his or her memory – daily billing records to allocate the amount of time spent on each specific daily task. (Dkt. ## 183-194). Although reconstructed billing records are not *per se* prohibited, the court should only allow them when they are "based upon other records which verify the activity in the case, such as the court file or the attorney's copies of letters, pleadings, or file memoranda." Usrey v. Wilson, 66 P.3d 1000, 1002 (Ok. Civ. App. 2003). Plaintiffs did not offer any evidence which would substantiate the reliability of their reconstructed records. For this reason, the undersigned finds that plaintiffs' reconstructed records are unreliable.

"(W)here block billing makes it difficult, if not impossible, for the Court to determine the amount of time spent on specific tasks, a general reduction in attorney fees may be warranted." ONG, 355 F.Supp. at 1263. Because the use of block billing has prevented the undersigned from determining the reasonableness of plaintiffs' fee request both as to time spent on specific tasks and time spent on non-fee bearing claims, the undersigned finds that plaintiffs' block billing warrants an additional reduction in plaintiffs' fee award of an additional ten percent (10%). This reduction is modest and is made in light of the other significant reductions recommended above. Further, this reduction is solely for the purpose of addressing the undersigned's inability to accurately determine how much time was expended on each individual task and does not "double" penalize plaintiffs for the other deficiencies addressed herein.

D.    **Burk Factors**

Oklahoma courts have recognized "that a lodestar fee may be unreasonably high or unreasonably low." <u>Atwood</u>, 25 P.3d at 951.   Thus, the undersigned has considered the factors set forth in <u>Burk</u>, enumerated below.

1.    **Time and Labor Required**

The undersigned has adjusted plaintiffs' fee in determining the reasonable number of hours for purposes of the lodestar calculation by eliminating half of the timekeepers as excessive and duplicative.   A further overall percentage adjustment was necessary due to non-fee bearing claims and block billing.   Since these adjustments have already been made, no further adjustment is necessary.

2.    **Novelty and Difficulty of the Questions Presented and Skill Required to Perform the Legal Services**

Complex cases may justify a higher fee and a simple case a lower fee.   <u>Henderson v. Horace Mann Ins. Co.</u>, 560 F.Supp.2d 1099, 1120.   This case involved a straight forward dispute over employees leaving one company and aligning with another company in violation of a non-competition agreement and Oklahoma's trade secret law.   Neither the facts, nor the issues in this case were complex.   Moreover, the case could have been more effectively and efficiently presented with substantially fewer lawyers on plaintiffs' team.   This factor has been addressed above and does not warrant a change in the recommended fee.

3.    **Preclusion of Other Employment**

Any such preclusion, if claimed, was caused by too many timekeepers being needlessly assigned to perform isolated tasks on this case.   Given the size of plaintiffs' counsel's law firm, there is no credible evidence to suggest that this factor weighs in favor of an enhancement.

**4.** **Customary Fee**

This factor weighs against plaintiffs.   Plaintiffs offered no evidence that their fee request was anything but typical considering the causes of action, manner presented, and the results achieved.   It is plaintiffs' responsibility to present to the court a reasonable fee application, even if plaintiffs must cut fees.   Harolds Stores v. Dillards Department Stores, 82 F.3d at 1552 (in a copyright infringement and antitrust action, Tenth Circuit affirmed reduction of fees from $277,173.22 to $30,000.00.)   "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended."   Case v. Unified School District, 157 F.3d at 1254.   Plaintiffs failed to do so.

**5.** **Fixed or Contingent Fee**

Counsel alleges that they have an hourly rate fee arrangement with plaintiffs.   This factor is of little importance to a determination of fees in this case.

**6.** **Time Limits Imposed by Client**

The District Court efficiently moved this case from start to finish in fourteen months.   Fourteen months is not such a small amount of time as to cause the hours spent on this case to increase over the norm, and it is certainly not such a long period of time that the undersigned would expect plaintiffs to incur additional fees due to delay.

**7.** **Amount Involved and Results Obtained**

This factor weighs heavily against plaintiffs.   Plaintiffs' fee request of $523,739.06 is more than sixteen times the amount of their recovery of $31,380.00, and their recovery is overwhelmingly less than the $2.3 million in damages they sought.   See Southwestern Bell, 737 P.2d at 1189.   ("(I)f the total of hours spent was as the attorney claimed then the case had been overworked.").   At the fee hearing, plaintiffs' counsel claimed that plaintiffs received "excellent

29

results," explaining that plaintiffs' primary interest was in obtaining the one-year injunction.   This assertion is not consistent with the record.   Plaintiffs originally sought a much broader injunction (see Dkt. # 2 at 5, 13), and there is no indication that plaintiffs ever indicated to the Court or the other side that a seven county injunction was the primary relief they hoped to achieve.   To the contrary, plaintiffs persisted in their request for a seven state injunction.   (Dkt. # 3, Ex. 3; Dkt. # 35; Dkt. # 51; Dkt. # 84 at 19-20).   Moreover, plaintiffs suffered a major defeat on the amount of damages they sought compared to their recovery, likely due at least in part to their carelessness in the handling of their expert witness.   If plaintiffs' argument is accepted, then plaintiffs' counsel overworked this case, since a comparatively small percentage of the legal work reflected in plaintiffs' billing records relate to their injunctive relief claim.   Moreover, requiring defendants to defend against a claim of $2.3 million, as opposed to a one year, seven county injunction, necessarily exacerbated the litigation.

The Tenth Circuit has approved a general reduction in time billed by multiple attorneys based on a finding that the time was "unnecessary, unreasonable or unproductive" and that less time was reasonable.   Mares v. Credit Bureau of Raton, 801 F.2d at 1203.   Moreover, "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained."   Atwood, 25 P.3d at 952 citing Hensley v. Eckerhart, 461 U.S. 424 (1983).   "Thus, factors such as whether the optimal, unsuccessful activity was necessary, reasonable, or useful to the ultimate outcome of the case may be considered."   Id. Here, this factor weighs against plaintiffs' fee request.

### 8.   Experience, Reputation and Ability of the Attorneys

The undersigned has no reason to doubt the experience, reputation, or ability of the attorneys and staff associated with the law firm of Ford & Harrison.   However, the undersigned

does question the discretion exercised by the attorneys assigned to this case in using twenty-two timekeepers when less than half that number would have been more than adequate.   Thus, this factor weighs against a full award of fees to plaintiffs.

**9.   Undesirability of the Case and Nature and Extent of the Professional Relationship**

Because plaintiffs are an established client of Ford & Harrison, this is not a relevant factor in the fee determination.

**10. Awards in Similar Cases**

The fee recommended below is more than twice the judgment recovered.   Such a corresponding award has been approved in other contract cases.   For example, in Arkoma, plaintiff recovered $100.00 on an implied warranty claim, but requested $25,000.00 in attorney fees as prevailing party.   Arkoma, 849 P.2d at 393.   The trial court's award of $5,500.00 in fees was affirmed on appeal.   Id. at 393, 395.   In Southwestern Bell Telephone Co., the trial court awarded $5,000.00 in fees after a confession of judgment for $1,500.00.   Southwestern Bell Telephone Co., 737 P.2d at 1188.   The Oklahoma Supreme Court found the award excessive and reduced it to $3,000.00.   Id. at 1190.   In cases before this Court and elsewhere, attorney fee awards in contract cases have covered the spectrum-ranging from less that the judgment to, in certain cases, a fee award far in excess of the amount recovered.   Henderson v. Horace Mann Ins. Co., 560 F. Supp.2d at 1122.

**11. Burk Factors Considered**

When considered in the abstract, the Burk factors warrant a reduction in the fee requested by plaintiffs.   However, in light of the significant reductions already recommended and the fact that these reductions are based on findings which are generally duplicative of those to be

31

considered under <u>Burk</u>, the undersigned recommends that the <u>Burk</u> factors be viewed only as additional support for the reductions recommended above, and that plaintiffs' fee request not be reduced further.[20]

### E.     Calculation of Fee Award

In arriving at a reasonable fee, the undersigned RECOMMENDS that:   (1) the hours of eleven timekeepers be stricken as unreasonably excessive and duplicative; (2) the hours for expert discovery be stricken as unproductive and largely irrelevant due to plaintiffs' own carelessness; (3) the hours for the remaining timekeepers be reduced by five-sixths to account for non fee-bearing claims; and (4) the resulting fee award based on numbers (1) through (3) be reduced by ten percent (10%) to account for block billing.   The specific calculations are as follows:

| Request | | $523,739.06 | |
|---|---|---|---|
| **Eleven Timekeepers – Initial Motion** | | | |
| Don Bingham | 1,215.00 | | pleadings |
| | 2,947.50 | | motion practice |
| | | **$4,162.50** | |
| Dawn Silver-Nixon | 3,353.60 | | pleadings |
| | 1,021.80 | | discovery |
| | 2,073.60 | | discovery |
| | 1,729.20 | | motion practice |
| | 3,657.60 | | motion practice |
| | 576.00 | | trial preparation |
| | 288.20 | | settlement |
| | 115.20 | | settlement |
| | 518.40 | | findings of fact/conclusions of law |
| | | **$13,333.60** | |
| Jeffrey Mokotoff | | **$4,270.60** | motion practice |

[20]  In light of the numerous problems with plaintiffs' fee request, there are enumerable ways in which the undersigned could reach a "reasonable" fee award.   For example, more emphasis could have been placed on block billing or another method could have been used to address the non-fee bearing claims.   The undersigned has considered many of these possibilities and concluded that each would lead to approximately the same result.

| | | | |
|---|---|---|---|
| M. Susan Sacco | 2,534.40 | | motion practice |
| | 1,267.20 | | trial practice |
| | | **$3,801.60** | |
| Sonya Boun | | **$2,074.80** | discovery |
| Bradley Hall | | **$2,317.50** | discovery |
| Steven Coleman | | **$2,618.20** | FF/CL |
| Thomas Allen | | **$5,478.00** | FF/CL |
| Rebecca Bastian | | **$    82.50** | discovery |
| Heidi Daniels | | **$4,059.00** | discovery |
| Brandye Fenn | 726.00 | | motion practice |
| | 858.00 | | trial preparation |
| | | **$1,584.00** | |
| Total-Eleven timekeepers stricken: | | **$43,782.30** | |
| Expert Discovery | | **$14,921.70** | |
| Total Stricken: | | **$58,704.00**[21] | |
| Revised Total | | | |
| $523,739.06 - 58,704.00 = | | **$465,035.06** | |
| One-sixth Allowed | | | |
| $465,035.06 x 1/6 = | | **$77,505.84** | |
| Ten Percent Block Billing Reduction | | | |
| $77,505.84 x .90 = | | **$69,755.26** | |

## F.    Plaintiffs' Substituted Supplement

Following the fee hearing (Dkt. # 211), plaintiffs filed a Motion for Leave to file Substituted Supplement to Motion For Award of Attorney Fees.  (Dkt. # 214).  This motion was granted on January 21, 2010.  (Dkt. # 250).  Through the Substituted Supplement, Plaintiffs are requesting an additional $110,290.30 in fees incurred in seeking their fees and costs.  (Dkt. ##

---

[21]  "Total Stricken" amount is corrected from Dkt. # 220 total due to a mathematical error.   The corrected total is reflected throughout the remaining totals.

211, 214, Ex. 1).

The undersigned has reviewed plaintiffs' Substituted Supplement in detail and finds that plaintiffs' request for $110,290.30, primarily for the presentation of their fee application, is entirely unreasonable. First, the amount of time incurred is so grossly out of proportion to the work performed that it is difficult to reasonably assess whether any amount would be appropriate. Second, a substantial portion of plaintiffs' "fees on fees" were incurred in manipulating their contemporaneous exhibits in a failed attempt to overcome defendants' valid objections. See, e.g., (Dkt. # 214, Ex. 1). Third, plaintiffs' supplement and substituted supplement give the appearance that plaintiffs seek to recover from defendants in fees what they otherwise were unable to recover in damages.

Moreover, on February 25, 2009, plaintiffs filed a "Motion for Leave to Supplement Contemporaneous Time Records." (Dkt. # 215). This motion is plaintiffs' third attempt to manipulate their "contemporaneous" time sheets based on defendants' valid objections. In this latest supplement, "Plaintiffs seek to provide the breakdown of time entries in an abundance of caution to assist the Court if it decides that Oklahoma law requires an allocation of the attorneys' fees incurred by Plaintiffs between fee-bearing and non-fee bearing claims (or for any other reason)." Plaintiffs' counsel admits that this latest supplement "obviously" required them to "reconstruct this aspect of their time entries." (Dkt. # 215 at 2).

As previously stated, although there is authority that allows a prevailing party to reconstruct their contemporaneous billing records (see, e.g., Spencer v. OG&E, 171 P.3d 890, 895 (Okla. 2007)), those cases present the exception, not the rule, and require evidence of credibility

and reliability.   In this instance, plaintiffs offered no such evidence, other than self-serving affidavits.

Nonetheless, plaintiffs are entitled to some fee award in connection with their effort to seek fees.   However, the undersigned is unable to determine, from a review of plaintiffs' supplements, how much time plaintiffs' counsel would have reasonably expended on this task had appropriate time records been kept and had plaintiffs only sought fees reasonably expended in prosecuting their single successful fee bearing claim.   Thus, based on a detailed review of plaintiffs' time records and the knowledge of this case gained through the preparation of this Report and Recommendation (and the initial Report and Recommendation), the undersigned RECOMMENDS that plaintiffs be awarded ten percent of the amount of the fee award calculated above.   This amount is $6,975.53.[22]

## G.   Reasonableness of Hours Requested for Fees Incurred On and After February 19, 2009

In plaintiff's Second Supplement to Motion for Award of Attorneys' Fees and Non-Taxable costs, plaintiff seek an award of $49,473.60 in attorney fees incurred after February 19, 2009.[23]   Plaintiffs incurred these fees in "preparing, serving, and reviewing the responses to subpoenas to monitor Defendants' compliance with the injunction and in litigating their fee application."   (Dkt. # 237).

---

[22]   $69,755.26 x .10= $6,975.53

[23]   In plaintiff's February 25, 2009 Substituted Supplement to Motion for Award of Attorneys' Fees, plaintiff seeks fees incurred through February 19, 2009 for work performed by all counsel and through February 20, 2009 for work performed by their local counsel.   (Dkt. # 214). Plaintiffs' November 20, 2009 Supplement seeks fees incurred from February 20, 2009 for its lead counsel and fees incurred after that date for all counsel. (Dkt. # 237).

### 1. <u>Attorney Fees Incurred in Monitoring Defendants' Compliance with the Injunction</u>

The Noncompetition Agreements allow plaintiff to recover their reasonable attorney fees and costs "incurred in connection with the litigation."  Moreover, the Judgment authorizes plaintiffs "to monitor defendants John R. Sappington's and William B. Emmer's compliance with this final judgment by all lawful means, including, but not limited to, the use of compulsory process pursuant to Fed. R. Civ. P. 45."  (Dkt. # 159 at 3).   Thus, plaintiffs are entitled to their reasonable attorney fees incurred in enforcing the Judgment, which obligates Sappington and Emmer to comply with the enforceable provisions of the Noncompetition Agreements. Defendant does not dispute this conclusion, but does dispute the amount of fees sought.

Plaintiffs seek $3,761.20 for their counsel's efforts in monitoring compliance with the injunction.  (Dkt. # 237-2 at 28).   The undersigned has reviewed, in detail, each time entry that encompasses this request and finds the time to be reasonable in all respects.   Plaintiffs seek a total of 13.8 hours, the largest single entry of which (5.3 hours) was incurred researching and analyzing documents produced by Rolled Alloys in compliance with a subpoena issued to monitor the District Court's Judgment.   The undersigned is not able to identify any unnecessary or wasteful time with respect to this portion of the fee request.[24]   Thus, the undersigned RECOMMENDS that plaintiff's fee request, in this regard, be granted in its entirety.

### 2. <u>Fees on Fees Request</u>

Plaintiffs "fees on fees" request is divided into three categories:   (1) Supplemental Fee Request (Dkt. # 237-2 at 29); (2) plaintiff's objection to the undersigned's initial Report and

---

[24]   Apportionment is not an issue with respect to plaintiffs' request for fees related to the enforcement of the Judgment, because all of the fees incurred relate only to the fee bearing claim on which plaintiffs' prevailed.

Recommendation (Dkt. # 237-2 at 32); and (3) Second Supplemental Fee Request (Dkt. # 237-2 at 35).

Plaintiffs' Supplemental Fee request consists of 107.7 hours, amounting to $25,458.00 in fees, incurred revising time sheets that were block billed and preparing a brief on the issue of apportionment.  The former was only necessary as a result of plaintiffs' counsel's poor time keeping and extensive block billing.  Plaintiffs should not be allowed to shift the burden of attempting to create accurate time sheets to defendants under any circumstances, but particularly in this instance, where plaintiffs' effort wholly failed.   In addition, plaintiffs should not recover fees incurred briefing the apportionment issue.   These fees were only necessary because plaintiffs, in attempting to justify their block billing, their improper billing methods, and their attempt to recover fees on non-fee bearing claims, argued that apportionment was not necessary, a position that is contrary to the well established law of this circuit.   Thus, these fees were not incurred in an effort to recover fees for the prosecution of a fee bearing claim, neither were they incurred in an effort to recover "fees on fees" for a fee bearing claim.   To the contrary, these fees were incurred in an effort to recover fees on non-fee bearing claims based on plaintiffs' failed arguments.   The undersigned RECOMMENDS that these fees not be awarded.

Plaintiffs' request for attorney fees related to the preparation and filing of their Objection to the Report and Recommendation seeks reimbursement for 75.5 hours of time, amounting to $16,920.80 in fees.   These fees were incurred in an effort to convince the District Court that the undersigned's initial Report and Recommendation should be rejected.   The undersigned has reviewed plaintiffs' Objection and, for purposes of this Report and Recommendation, has declined to adopt plaintiffs' arguments.   Plaintiffs should not be reimbursed fees for time incurred in a failed attempt to justify fees that the undersigned rejected.

37

Thus, the undersigned RECOMMENDS that the District Court reject plaintiffs' request for fees, as set forth in the Second Supplement.[25]

## H.    Non-Taxable Costs

Plaintiffs seek non-taxable costs in the sum of $20,012.92.   This figure includes copying and duplicating expense, computerized legal research fees, postage and delivery fees, travel expenses (for both attorneys and paralegals) and telephone charges.   (Dkt. # 161 at 4).   The only Tenth Circuit authority plaintiffs cite to support their request is Mares v. Credit Bureau of Raton, 801 F.2d 1197 (10th Cir. 1986), which involved a review of an attorney fee award authorized under federal statutory law:   the Truth-In-Lending Act, 15 U.S.C. §§ 1601-1667e; the Fair Credit Reporting Act, 15 U.S.C. § 1681-1681t; and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692-1692o.   Plaintiffs also cite a decision issued by the Arkansas Supreme Court which looked to the language of the parties' lease provision to determine the extent of costs recoverable.   "(A) plain reading of the provision demonstrates that the amount of costs recoverable by the prevailing party are all costs incurred in connection with such action. . . the words of the contract are to be taken and understood in their plain and ordinary meaning."  Phi Kappa Tau Housing Corp. v. Wengert, 86 S.W.3d 856, 859 (Ark. 2002).   Assuming plaintiffs' argument is accepted, in order to recover their non-taxable costs, plaintiffs must establish that the Non-Competition Agreements provide for the recovery of non-taxable costs.[26]

---

[25]   In the event the District Court declines to adopt the reasoning set forth in Section C. 4. of this Report and Recommendation, it may be appropriate to reconsider this issue.

[26]   The possible exception is plaintiffs' request to recover for the cost of computerized legal research.  Such costs have been awarded in this district, based on a general belief that such research makes an attorney more efficient and, thus, results in lower attorney fees.  Oklahoma Natural Gas Co. v. Apache Corp., 355 F.Supp.2d 1246, 1250 (N.D.Okla. 2004).  However, given the gross inefficiencies that occurred in this matter, the undersigned does not recommend that

The Non-Competition Agreements provide:

> In the event that (plaintiffs) institute() litigation to enforce its rights or remedies under this Agreement, Hughes shall be entitled to receive an award from Stockholder of its reasonable attorneys' fees <u>and costs</u> incurred in connection with such litigation.   The foregoing shall include reasonable attorneys' fees <u>and costs</u> (including paralegals' fees) incurred at trial, on any appeal and in any proceeding in bankruptcy.

(Dkt. # 69, Ex. A) (emphasis added).   Although the agreement allows plaintiffs to recover "costs," it does not, like the agreement in <u>Wengert</u>, allow the recovery of "all" costs.   A plain reading of the word "cost," standing alone, would reasonably lead one to the definition of costs used within the applicable statutory framework, which in this case includes the Local Rules, the Federal Rules of Civil Procedure, and the United States Code.   Costs under these provisions have already been awarded by the Court Clerk.   (Dkt. # 199).   Moreover, Oklahoma not only strictly adheres to the American rule with regard to attorneys' fees, it follows the same policy with respect to costs. <u>Rout v. Crescent Public Works Authority</u>, 878 P.2d 1045 (Okla. 1994).   Thus, the undersigned concludes that the Non-competition Agreements do not provide for the recovery of costs that are in excess of those recoverable under the applicable federal rules and statutes.   On this basis, the undersigned RECOMMENDS that plaintiffs' request for non-taxable costs be denied.

## RECOMMENDATION

The undersigned RECOMMENDS that plaintiffs' Motion For Award of Attorneys' Fees and Nontaxable Costs (Dkt. # 161) be GRANTED IN PART and that an attorney fees award in favor of plaintiffs and against defendants John R. Sappington and William B. Emmer in the amount of $80,491.99 be entered.   This amount is calculated as follows:

| | | |
|---|---|---|
| Total revised fee award: | $ 69,755.26 | (<u>see</u> <u>supra</u> at 33); |
| Award for fee application: | $  6,975.53 | (<u>see</u> <u>supra</u> at 35); |

these costs be allowed here.

Award for monitoring fees:     $  3,761.20  (see supra at 36)
                                        $ 80,491.99

## OBJECTION

The District Judge assigned to this case will conduct a *de novo* review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned.   As part of her review, the Judge will consider the parties' written objections to this Report and Recommendation.   A party wishing to file objections to this Report and Recommendation must do so within fourteen days after being served with a copy of this Report and Recommendation.   See 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).   The failure to file written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court.   See Moore v. United States, 950 F.2d 656 (10th Cir. 1991); and Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

DATED this 11th day of February, 2010.


_____
T. Lane Wilson
United States Magistrate Judge