**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

**SOUTHWEST STAINLESS, L.P., and HD SUPPLY, INC.**

**Plaintiffs,**

**v.**

**JOHN R. SAPPINGTON, WILLIAM B. EMMER, RONALD L. SIEGENTHALER, and ROLLED ALLOYS, INC.,**

**Defendants.**

**Case No. 07-CV-0334-CVE-TLW**

**OPINION AND ORDER**

On February 11, 2010, Magistrate Judge T. Lane Wilson issued a report and recommendation (Dkt. # 251) on plaintiffs' Motion for Attorneys' Fees and Nontaxable Costs (Dkt. # 161). Plaintiffs seek a total of $709,297.81 in trial-level attorney fees incurred to date.[1] The magistrate judge recommended that the Court grant plaintiffs' motion for attorney fees, but not for the full amount sought. Further, the magistrate judge recommended that the Court deny plaintiffs' motion for non-taxable costs. Plaintiffs filed objections to the report and recommendation (Dkt. # 255).

**I.**

This was an action by a former employer against former employees and their new employer for breaches of contracts and violations of other legal duties. Dkt. # 158, at 1. On April 1, 2008, the Court entered an Opinion and Order (Dkt. # 136) granting defendants summary judgment on

---

1 Plaintiffs' separate application and supplement for appeal-related attorney fees is pending (Dkt. ## 235, 263).

plaintiffs' breach of acquisition agreement and breach of employment agreements claims. On August 1, 2008, following a non-jury trial, the Court entered judgment (Dkt. # 159) as follows:

Judgment in favor of defendants and against plaintiffs:

- in favor of defendants Sappington and Emmer against plaintiffs Southwest Stainless, L.P. (SS) and HD Supply, Inc. (HD) as to the plaintiffs' breach of employment agreements claim;
- in favor of defendants Siegenthaler, Sappington, and Emmer and against plaintiffs SS and HD as to the plaintiffs' breach of acquisition agreement claim;
- in favor of defendants Sappington and Emmer and against plaintiffs SS and HD as to the plaintiffs' interference with business relations claim;
- in favor of defendant Emmer and against plaintiffs SS and HD as to plaintiffs' breach of fiduciary duties claim; and
- in favor of defendants Siegenthaler and Emmer and against plaintiffs SS and HD as to plaintiffs' misappropriation of trade secrets claim.

Judgment in favor of plaintiffs and against defendants was entered:

- in favor of plaintiffs SS and HD and against defendants Sappington and Emmer as to plaintiffs' breach of noncompetition agreements claim;
- in favor of plaintiffs SS and HD and against defendant Sappington as to plaintiffs' breach of fiduciary duties claim;
- in favor of plaintiffs SS and HD and against defendants Siegenthaler and Rolled Alloys, Inc. (RA) as to plaintiffs' interference with contractual relations claim; and
- in favor of plaintiffs SS and HD and against defendants Sappington and RA as to plaintiffs' misappropriation of trade secrets claim.

Plaintiffs were awarded $62,580 in damages, and Sappington and Emmer were enjoined for one year from engaging in certain business within Tulsa County, Oklahoma and seven surrounding counties. The Court determined that plaintiffs were "prevailing parties" and granted them leave to seek reasonable attorney fees and costs. Dkt. # 158, at 56. The magistrate judge conducted a hearing and issued a report and recommendation (Dkt. # 220) (hereinafter the first report and recommendation).

On September 21, 2009, the Tenth Circuit issued a decision (Dkt. # 224) affirming the judgment except with respect to the misappropriation of trade secrets claim. Consistent with the Tenth Circuit's mandate, the Court entered an Amended Final Judgment and Order for Permanent Injunction (Dkt. # 231). The Court entered judgment in favor of defendants Sappington, Siegenthaler, Emmer, and RA and against plaintiffs SS and HD as to plaintiffs' misappropriation of trade secrets claim. The amount of damages awarded was reduced to $31,380. Dkt. # 231.

Defendants filed a motion for reconsideration of the first report and recommendation regarding attorney fees (Dkt. # 225). The Court granted the motion and recommitted the plaintiffs' motion for attorney fees to the magistrate judge for reconsideration in light of the Tenth Circuit's decision. Dkt. # 226. On January 21, 2010, the magistrate judge conducted a second hearing on plaintiffs' motion for attorney fees, and issued a second report and recommendation (hereinafter the report and recommendation). Dkt. # 251. He recommended that plaintiffs be awarded $80,491.99 in attorney fees and no non-taxable costs. Id.

A. Plaintiffs' Fee Application and Supplements

Plaintiffs' Motion for Award of Attorneys' Fees and Nontaxable Costs (Dkt. # 161) seeks $545,769.18, comprised of $525,756.26 in attorney fees and $20,012.92 in non-taxable costs. Id. at 2. As the report and recommendation states, fees are sought for the work of twenty-two people,

including two local attorneys, seven partners, six associates, one summer intern and six paralegals. Dkt. ## 251, at 8; 161-2, at 2; 161-6. Plaintiffs also stated that they would supplement their application for attorney fees and non-taxable costs with fees and costs associated with the fee application itself. Dkt. # 161, at 4. Defendants argued that the amount of fees requested was unreasonable because, among other reasons, plaintiffs' counsel's practice of block billing merited an across-the-board reduction in fees. Dkt. # 174, at 22. Plaintiffs responded by filing twelve additional affidavits, in an effort to itemize time entries to which defendants specifically objected. Dkt. # 182, at 5. Plaintiffs also voluntarily eliminated $2,017.20 of billing errors raised in defendants' response. Dkt. # 251, at 2.

On October 23, 2008, plaintiffs filed a supplement to the fee application, seeking an additional $94,687 for services post-dating the initial fee application.[2] Dkt. ## 202, 204. On February 25, 2009, plaintiffs filed a Motion for Leave to File Substituted Supplement to Motion for Award of Attorneys' Fees (Dkt. # 214). The Substituted Supplement seeks an additional $110,290.30 in attorney fees over the initial $525,756.26 request. Dkt. # 214-2, at 1. On November 20, 2009, plaintiffs filed a Motion for Leave to File Second Supplement to Motion for Award of Attorneys' Fees and Non-Taxable Costs (Dkt. # 237), in which they sought leave to add a request for an additional $49,473.60 in fees incurred after February 20, 2009. The magistrate judge granted the motions to file the supplements. Dkt. # 250. On April 5, 2010, plaintiffs filed Plaintiffs Third

2 The magistrate judge stated that he admonished plaintiffs' counsel for filing the supplemental motion for attorney fees without first seeking leave of court. Dkt. # 251, at 8-9. Plaintiffs "object to Judge Wilson's characterization of this exchange as an admonishment." Dkt. # 255. First, the Court fails to see how this characterization is material; second, the magistrate judge's description of his own state of mind is bound to be more accurate than plaintiffs' recollection.

Supplement Regarding Trial-Level Fees (Dkt. # 264), seeking $25,794.65 in fees incurred after November 20, 2009. Thus, plaintiffs' total trial-level attorney fee request, to date, is $709,297.81. Plaintiffs also seek $150,894.17 in appeal-related attorney fees.[3] Dkt. ## 235, 263.

B. The Report and Recommendation

The report and recommendation is forty pages long and reflects a painstaking analysis of the voluminous record relating to the fee application. The magistrate judge applied Oklahoma's two-step procedure for arriving at a reasonable attorney fee: first calculating the lodestar fee, and then adjusting the lodestar fee, if warranted, by considering the factors set forth in State ex rel Burk v. City of Oklahoma City, 598 P.2d 659 (Okla. 1979) (the Burk factors). Dkt. #251, at 11. He noted that defendants have stipulated to the reasonableness of plaintiffs' hourly rates, and proceeded to determine whether the number of hours billed was reasonable. Id. at 12.

The magistrate judge first reduced the number of hours billed to eliminate excessive duplication of work among timekeepers. Id. at 15. He conducted a detailed review of each timekeeper's work, and determined that the work of eleven timekeepers - one local counsel, three partners, three associates, three paralegals, and one summer intern - was excessively duplicative of other work. This reduced the fees to those billed by one local counsel, four partners (including both trial lawyers), three associates, and three paralegals. Id. at 17. This reduced the total amount of the fee application by $43,782.30. Id. at 33.

Next, the magistrate judge reduced the number of hours billed to eliminate hours billed for "expert discovery." Plaintiffs' damages expert was excluded from testifying at trial because plaintiffs failed to provide defendants a copy of their expert's written report as required by Fed. R.

---

3 These fees are not part of this Opinion and Order.

Civ. P. 26(a)(2)(B).[4] Dkt. # 137. The magistrate judge determined that costs relating to the expert, who was excluded due to plaintiffs' carelessness, should not be imposed on defendants. He excluded seventy-two hours billed for expert discovery. Dkt. # 251, at 21.

The magistrate judge determined that the fees requested should be further reduced to account for apportionment among claims. He reviewed the relevant law and determined that plaintiffs' fees must be "apportioned between fee bearing and non-fee bearing claims, unless the movant can establish that some or all of the fees that were incurred on the non-fee bearing claims were necessary to the prosecution or defense of the fee bearing claims in which case an apportionment of those specific fees is not required." Dkt. # 251, at 24. The noncompetition agreements are the sole basis for a fee award in this case. Id. at 25. The magistrate judge could not determine how much time was spent on the noncompetition agreements claim versus the other claims, due to plaintiffs' block billing. Id. He concluded that the hours billed by the eleven approved timekeepers should be reduced by five-sixths to account for time spent on the non-fee bearing claims. Id. at 26. This reduced the fees allowed to $77,505.84. Id. at 33.

The magistrate judge determined that plaintiffs' practice of block billing made it difficult to determine the amount of time spent on specific tasks. He found that plaintiffs' reconstructed time records were not reliable. Id. at 27. He determined that the fee application should be reduced by ten percent in order to account for the inability to determine how much time was expended on each individual task. Id. This reduced the fees allowed to $69,755.26. Id. at 33. He then applied the

---

[4] Plaintiffs appealed Magistrate Judge Frank H. McCarthy's determination on this matter. Dkt. ## 139; 140. The Court affirmed Magistrate Judge McCarthy's decision. Dkt. # 144.

Burk factors. He concluded that the Burk factors did not require additional adjustment of the fee, but that these factors supported the reductions already made. Id. at 32.

The magistrate judge next reviewed the substituted supplement (Dkt. # 214-2), in which plaintiffs request an additional $110,290.30 in fees incurred in connection with seeking fees and costs. He found that "the amount of time incurred is so grossly out of proportion to the work performed that it is difficult to reasonably assess whether any amount would be appropriate." Dkt. # 251, at 34. Further, he found that some of the time expended was in connection with plaintiffs' attempts to clarify or reconstruct their own time records in order to respond to defendants' objections. Id. However, he determined that plaintiffs were entitled to some fees in connection with their effort to seek fees. He recommended that they be awarded ten percent of the amount of the trial fee award, or $6,975.53. Id. at 35.

The magistrate judge then reviewed the second supplement, for fees incurred after February 19, 2009 (Dkt. # 237). He recommended that the fees incurred in enforcing the judgment in this case be granted. He recommended that the requested fees incurred in association with litigating the fee request be rejected. He determined that fees associated with preparing the supplemental fee request were incurred because of plaintiffs' counsel's "poor time keeping and extensive block billing," and their unsuccessful attempt to argue that apportionment between fee bearing and non-fee bearing claims was unnecessary. Dkt. # 251, at 37. He determined that the fees incurred in preparation and filing of their objection to the initial report and recommendation on attorney fees should be rejected because "[p]laintiffs should not be reimbursed fees for time incurred in a failed attempt to justify fees that the undersigned rejected." Id.

Finally, the magistrate judge determined that plaintiffs' request for non-taxable costs (in excess of those recoverable by rule and statute) should be rejected. Id. at 39. Thus, he recommended that plaintiffs' be awarded a total of $80,491.99 in attorney fees.

**II.**

Plaintiffs filed objections to the report and recommendation. Dkt. # 255. Pursuant to Fed. R. Civ. P. 72(b), the Court will conduct a de novo review and consider each of plaintiffs' objections.[5]

Oklahoma law governs the attorney fee award in this case.[6] Oklahoma follows the American Rule, which means that parties generally pay their own attorney fees. However, in this case, the parties agree that the noncompetition agreements provide for an award of reasonable attorney fees. There is a two-step process to determine the reasonableness of a fee request. First, the "lodestar" fee is calculated, which is the product of the number of attorney hours reasonably expended and a reasonable hourly rate. See Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998). Second, if appropriate, the lodestar fee is enhanced or reduced based on the Burk factors. Spencer v. Okla. Gas & Elec. Co., 171 P.3d 890, 895 (Okla. 2007); Staton v. Guar. State Bank of Magnum,

---

5 The Court has considered each of plaintiffs' objections. However, certain objections are more properly characterized as minor quibbles with particular language used in the report and recommendation. See, e.g., Dkt. # 255, at 30 ("[p]laintiffs object to the Report and Recommendation's statement that Plaintiffs withdrew the original supplement outright before leave was granted to file the substituted supplement"); see also n.1, supra. The Court will not specifically discuss plaintiffs' objections to matters that do not affect the outcome of the fee determination.

6 In a diversity case, attorney fees are determined pursuant to the forum state's law. Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1435 (10th Cir. 1993). No party disputes that Oklahoma law applies in this case.

178 P.3d 186, 190 (Okla. Civ. App. 2007). "In all cases, the attorney fees must bear some reasonable relationship to the amount in controversy." Staton, 171 P.3d at 895.

A. Court's Responsibility to Determine a Reasonable Fee

Plaintiffs argue that it is improper for the Court to determine a reasonable fee in this case. Dkt. # 255, at 6. Essentially, they argue that any scrutiny of their fee requests is improper. Plaintiffs are contractually entitled to fees and costs pursuant to the noncompetition agreements. The noncompetition agreements state:

> In the event that Hughes institutes litigation to enforce its rights or remedies under [the noncompetition agreement], Hughes shall be entitled to receive an award from Stockholder of its reasonable attorneys' fees and costs incurred in connection with such litigation. The foregoing shall include reasonable attorneys' fees and costs (including paralegals' fees) incurred at trial, on any appeal and in any proceeding in bankruptcy.

Dkt. # 69-3, at 46 (emphasis added). Plaintiffs cite United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc., 834 F.2d 1533 (10th Cir. 1987), for the proposition that, when considering contractually-guaranteed attorney fees, courts should not make an independent determination of what fees are reasonable. The Western States court stated that, when interpreting a contractual provision awarding attorney fees, "the trial court's role is to determine if the claimed fees are inequitable or unreasonable. If so, the trial court has discretion to deny or reduce the fee award. However, the trial court is not responsible for independently calculating a 'reasonable' fee." 834 F.2d at 1549. Western States does not control this case for two reasons. First, the contract at issue in Western States provided, "[s]hould the account be referred to an attorney for collection, the undersigned shall pay all attorney's fees and collection expenses." Id. at 1547 (emphasis added). In this case, the contract provides for the payment of reasonable attorney fees only. Dkt. # 69-3, at 46. As a matter of contract interpretation, the Court must determine what reasonable attorney fees

are. Second, it is not clear whether the Tenth Circuit applied federal or New Mexico law in Western States. See id. at 1549 n.17 ("to the extent that determining the amount of attorneys' fees to be awarded is a matter of substantive contract law, we again decline to decide if federal or state law governs"). Regardless, the Tenth Circuit did not apply Oklahoma law.

In Sooner Builders & Investments, Inc. v. Nolan Hatcher Construction Services, L.L.C., 164 P.3d 1063 (Okla. 2007), the Oklahoma Supreme Court reviewed the issue of attorney fees in a contract that awarded a prevailing party the right to "recover reasonable attorney's fees, costs, charges and expenses expended or incurred [in a suit or arbitration to enforce the contract]." Id. at 1069. The Sooner Builders court stated:

> The language 'reasonable attorney's fees, costs, charges and expenses' places the amount of money which the prevailing party has a right to recover within the discretion of the court or the arbitrator, leaving the court or the arbitrator to decide what are reasonable amounts for attorney fees and expenses expended or incurred by the prevailing party.

Id. Pursuant to Oklahoma law, the Court must determine what "reasonable" fees and costs are in this case, in order to give the parties the benefit of their bargain for "reasonable" fees and costs. Thus, plaintiffs' objection to "Judge Wilson's overall approach," Dkt. # 255, at 8, is overruled.

B. Exclusion of Dawn Siler-Nixon's Time

The magistrate judge determined that the overall number of hours billed by plaintiffs' counsel was unreasonable, in part due to excessive duplication of work among timekeepers. Dkt. # 251, at 15. In order to eliminate this duplicative work, he identified eleven timekeepers whose work was not reasonably necessary to the prosecution of plaintiffs' claims. Id. He acknowledged that, by using this approach "certain specific time entries that may have been reasonably necessary for the prosecution of plaintiffs' claims have been eliminated. However, at least an equal number

of excessive or unnecessary hours billed by those timekeepers whose time has not been eliminated has been allowed." Id.

"The district court may . . . reduce the reasonable hours awarded if 'the number [of compensable hours] claimed by counsel include[s] hours that were unnecessary, irrelevant and duplicative.'" Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998) (quoting Carter v. Sedgwick County, Kan., 36 F.3d 952, 956 (10th Cir. 1994)). Because it would be practically impossible for the district court to justify each disallowed hour or announce what hours are permitted for each task, "'[a] general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use.'" Id. (quoting Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1201 (10th Cir. 1986)). Plaintiffs do not generally object to the magistrate judge's approach in this regard, nor do they object to the elimination of ten timekeepers' time. They do, however, object to the exclusion of partner Dawn Siler Nixon's (DSN) time.

The magistrate judge excluded DSN's time because it was duplicative of William Grob's (WEG) time. Dkt. # 251, at 18. Plaintiffs argue that this work was not duplicative because WEG did not become a partner until two months before trial. Dkt. # 255, at 32. DSN billed an excessive number of hours reviewing WEG's work product, regardless of whether WEG was a senior associate or a partner at the time. Further, the fact that DSN "manages the firm's relationship with HD Supply and she is primarily responsible for communicating with and overseeing the work performed by Ford & Harrison for HD Supply," id. at 32-33, does not counsel a different result. First, the fact that DSN manages the firm's overall relationship with HD Supply suggests that some of her hours are attributable to management of the business relationship in general, rather than to this particular

matter, let alone the fee bearing claim. Second, the fact that she was responsible for overseeing the firm's work on HD Supply matters does not mean that her time was not duplicative of others'. Eliminating all of DSN's time is a reasonable method of eliminating duplicative, unreasonable, and unnecessary time billed. Plaintiffs' objection to the elimination of DSN's time is overruled, and this portion of the report and recommendation is accepted. Plaintiffs' request for $523,739.26 should be reduced by $58,704.00 to account for these eleven timekeepers and the time billed for expert discovery, per the report and recommendation. The subtotal adjusted fee request is $465,035.26.

C. Apportionment, Hampered by Block Billing

Plaintiffs object to the apportionment of fees in this case. They argue that Oklahoma law does not require apportionment in cases where the fee bearing and non-fee bearing claims "arise from a common core of facts . . . . The only apportionment required for interrelated claims is exclusion of fees related solely to the non-compensable claims." Dkt. # 255, at 12 (emphasis in original).

There are a number of Oklahoma and Tenth Circuit cases relating to the apportionment issue. In Sisney v. Smalley, 690 P.2d 1048 (Okla. 1984), the Oklahoma Supreme Court affirmed the award of seventy-five percent of attorney fees incurred in an action. The undisputed evidence showed that the attorney spent seventy-five percent of his time on the fee bearing claim and twenty-five percent of his time on the non-fee bearing claim. Id. at 1049. In Green Bay Packaging, Inc. v. Preferred Packaging, Inc., 932 P.2d 1091 (Okla. 1996), the plaintiff brought claims for conversion, fraud, interference with business relations, conspiracy, and misappropriation of trade secrets against two former employees. The employees brought counterclaims for fraud, failure to pay wages, conversion, defamation, interference with business relations, and intentional infliction of emotional

distress. Id. at 1095. The jury found against plaintiff on every one of its claims, and in favor of defendants on some of their counterclaims. Id. The trial court awarded attorney fees to both defendants. The Oklahoma Supreme Court held that the trial court did not err in failing to apportion fees between one employee's wage claim and defense of the claims asserted by plaintiff, despite the fact that fees were only recoverable on his failure to pay wages claim, and not on his defense of the claims asserted against him. This was because the plaintiff's claims operated as setoffs against the wages that the first employee was owed and "became issues in the wage claim." Id. at 1098. However, the Green Bay Packaging court also found that the trial court should not have awarded fees associated with the defendant's counterclaims for interference with business relations and defamation (for which there was no right to attorney fees). The court directed the trial court to "reduce[ ] the award by the amount attributable to [employee's] unsuccessful counterclaim theories." Id. Thus, where attorney fees are attributable to both fee bearing and non-fee bearing claims, fees must be apportioned. See also RJB Gas Pipeline Co. v. Colo. Interstate Gas Co., 813 P.2d 1, 14 (Okla. Civ. App. 1989) ("[a]lthough this Court recognizes that in some instances it is unnecessary to apportion attorney fees between successful and unsuccessful claims, a party nevertheless is not allowed attorney fees on claims unless permitted by statute. . . . Thus, the trial court should have apportioned attorney fees to eliminate those fees for the unsuccessful punitive damages claims").

In Tsotaddle v. Absentee Shawnee Housing Authority, 20 P.3d 153 (Okla. Civ. App. 2000), the Oklahoma Court of Civil Appeals rejected the argument that the full amount of attorney fees should be awarded where the fee bearing and non-fee bearing claims were "inextricably intertwined." Id. at 162. In that case, a plaintiff brought a sexual harassment claim against an individual defendant and a housing authority. The defendant brought crossclaims against the

housing authority for firing him based on the sexual harassment allegations, under contract and § 1983 theories. The only claim for which the defendant was entitled to attorney fees was the § 1983 claim. However, he argued that he was entitled to all attorney fees incurred in the case because "every claim involved in the lawsuit revolved around the one issue of whether or not [he] sexually harassed [the plaintiff]." Id. at 161. The court rejected this argument, and held that "[e]ven if [defendant's] successful defense of [plaintiff's] claims was crucial to his success on the cross-claims he asserted against the Housing Authority, the claims themselves are separate and distinct and involve totally different issues and evidence." Id. at 162. The court noted that the only basis for attorney fees on other claims would be if those claims were asserted as a setoff to his claim. Id. (citing Green Bay, 932 P.2d at 1097-1100). The trial court was instructed to "determine reasonable attorney fees attributable to the successful prosecution of [defendant's] § 1983 civil rights claim." Id.

From these cases, it is clear that attorney fees need not be apportioned between fee bearing claims and setoffs to those claims. It is also clear that fees must be apportioned when fee bearing and non-fee bearing claims are "separate and distinct." Claims may be "separate and distinct" even where they share some common facts.

The Tenth Circuit has considered the apportionment of attorney fees under Oklahoma law. In Transpower Constructors v. Grand River Dam Authority, 905 F.2d 1413 (10th Cir. 1990), the plaintiff asserted negligence and breach of contract claims. However, the alleged negligence was the breach of contract. Id. at 1423. The defendant argued that an award of attorney fees that included time spent on the negligence action was improper, because the plaintiff was entitled to fees

on the breach of contract claim only. The Tenth Circuit considered Sisney, 690 P.2d 1048, and disagreed:

> Sisney . . . does not, as [defendant] contends, require attorneys to apportion fees in every case involving a negligence claim and some other claim for which fees are recoverable. Instead, it holds that a prevailing party can recover fees for that portion of his attorney's work not expended solely in prosecuting a related negligence action.

Transpower, 905 F.2d at 1423. Since proof of negligence was an essential element of the plaintiff's breach of contract claim, the Tenth Circuit held that fees incurred in association with the negligence issue did not need to be excluded. Id. This holding is not as broad as the plaintiffs argue it is. The Tenth Circuit did not hold that fees should not be apportioned merely because the fee bearing and non-fee bearing claims were "interrelated," cf. Dkt. # 255, at 14-15; the non-fee bearing claim was an essential element of the fee bearing claim. All work on the negligence claim would have been necessary even if the contract claim was the only claim in that case.

Eighteen years later, the Tenth Circuit decided Combs v. Shelter Mutual Insurance Co., 551 F.3d 991 (10th Cir. 2008). In Combs, an insurance agent brought suit against his employer alleging breach of contract, breach of implied covenant of good faith and fair dealing, fraud, and breach of fiduciary duty. The district court granted summary judgment to the agent on his breach of contract and breach of implied covenant of good faith and fair dealing claims. Id. at 994. It subsequently granted judgment as a matter of law to defendants on the fraud and breach of fiduciary duty claims. The district court apportioned fees between the contract and tort claims, using the grant of summary judgment as the point separating the two. Id. at 1001-02. The Tenth Circuit affirmed. The Combs court rejected the plaintiff's contention that the full amount of attorney fees should be awarded because the claims were "inextricably intertwined:"

> Oklahoma does not have an 'inextricably intertwined' theory upon which attorney fees do not have to be apportioned if the claims are closely related. Moreover, after the district court granted summary judgment for Plaintiff on the breach of contract claim, all that remained was the possibility of punitive damages arising from the tort claims. The district court was eminently reasonably in using this point as the appropriate cut-off for separating work performed on the contract and tort issues.

Id. at 1002. Contrary to plaintiffs' contention, Combs is not in direct conflict with Transpower. Cf. Dkt. # 255, at 17. Read together, the two cases require two things: first, that the district court award only those fees attributable to fee bearing claims; and second, that the district court employ a reasonable method of determining which fees are attributable to which claims. In Transpower, the district court did not need to apply any method of apportionment because all the attorney's time was necessarily attributable to the fee bearing claim. This was not the case in Combs.

Taken together, the cases summarized above require the apportionment of attorney fees between fee bearing and non-fee bearing claims. See United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000) (affirming district court's reduction of attorney hours by twenty percent in order to "compensate [plaintiff] only for work done on the [fee bearing] trademark infringement claim" and not other, non-fee bearing claims); see also Quail Creek Petroleum Mgmt. Corp. v. XL Specialty Ins. Co., 129 Fed. App'x 466, 471 (10th Cir. 2005) (unpublished)[7] (remanding for determination of what time was expended on bad faith claim only and not on breach of contract claim). However, when all of the fees would necessarily have been incurred in connection with the fee bearing claim alone, all fees are attributable to the fee bearing claim and no apportionment is necessary. See Travelers Indem. Co. v. Hans Lingl Anlagenbau Und Verfahrenstechnik GmbH &

---

[7] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1

Co. KG, 189 Fed. App'x 782, 788 (10th Cir. 2006) (unpublished)[8] (affirming non-apportioned fee award where "the time defendants' attorneys devoted to the [non-fee bearing] products-liability claims was necessarily incurred in defending the other claims, for which attorney fees are authorized").

Further, this caselaw must be read against the background principle that it is plaintiffs' burden to establish the reasonableness of their fee request. See, e.g., Mares, 801 F.2d at 1201. Plaintiffs' contention that no apportionment is necessary in this case is incorrect. Some of the fees are attributable to the non-fee bearing claims only. For instance, evidence regarding whether Nichol, RA's president, knew about the noncompetition agreements is not relevant to Sappington and Emmer's breach of those agreements. Plaintiffs cannot avoid apportionment of their fees by providing insufficiently detailed time records and asserting that no time need be apportioned. Therefore, plaintiffs' overall objection to apportionment is overruled.

Plaintiffs also object to the magistrate judge's five-sixths reduction of their fee request because it did not include "any analysis of the factual relationship between the fee bearing and non-fee bearing claims [or] any consideration of whether the same work would have been required if Plaintiffs had only been asserting the fee bearing claims." Dkt. # 255, at 20. The Court finds merit in this objection and rejects the size of this across-the-board reduction because some of the time spent on the other claims relating to Sappington and Emmer's activities before and after their departures and the damages associated with lost business would have necessarily been incurred had the breach of noncompetition agreements claim been the only claim in this case. It is clear that there

8 Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1

was a common core of facts around which most of the claims centered. However, it is also clear that much of the research, briefing, and argument regarding legal issues would not have taken place had the breach of noncompetition agreements been the only claim in this case.

At the hearing on their fee application, plaintiffs identified certain fees as attributable to the non-fee bearing claims only and deducted them from the fee request. Hearing transcript, at 2:01:30 - 2:05:50. These entries are properly excluded from the attorney fee award in this case. However, there are other fees that are attributable to the non-fee-bearing claims only. The Court has reviewed plaintiffs' time records line by line and identified the following categories of time attributable to the non-fee bearing claims:

- All fees associated with preparation and filing of the amended complaint (Dkt. # 52). The complaint alleged that Sappington and Emmer breached the noncompetition covenants in the acquisition agreement. See Dkt. # 2, at 5.[9] The amended complaint added Siegenthaler as a defendant, and therefore is not attributable to the fee bearing claim. See Dkt. ## 51, 52. These fees (not including those previously excluded) total $3,387.
- All fees associated with plaintiffs' motion for partial summary judgment (Dkt. # 82). The motion related to the tortious interference with contractual relations claim only. These fees (not including those previously excluded) total $28,760.20.
- All fees associated with the attempt to compel a second deposition of Siegenthaler. Plaintiffs argued that they needed to re-depose Siegenthaler because he was named as a defendant.

---

[9] Although the complaint did not describe the restrictive covenants as part of the noncompetition agreements, the necessary allegations were included. The noncompetition agreements were executed as a condition of the acquisition agreement.

The claims for which Siegenthaler was a defendant are not fee bearing claims. These fees (not including those previously excluded) total $2,752.20.

- All fees associated with the testimony of Nichol, Roberts, and Lesikar. These witnesses provided evidence regarding Siegenthaler's and RA's activities, but did not provide evidence relevant to Sappington and Emmer's breach of the noncompetition agreements. These fees (not including those previously excluded) total $45,173.20.
- Miscellaneous time clearly attributable to non-fee bearing claims, including:
    - Locating corporate and service of process information regarding RA: $55.50.
    - Investigating Sappington and Emmer's pay: $1,138.
    - Researching the duty of loyalty: $1,800.
    - Researching Myriad Technologies, Siegenthaler's consulting firm: $120.
    - Researching law relating specifically to employment agreements: $1,080.50.
    - Response to defendants' motion for summary judgment on counts II and III: $1,572.50.
    - Researching law on trade secrets: $1,312.

Thus, plaintiffs' fee application should be further reduced by $87,151.10 to account for fees identified by the Court that are attributable to non-fee bearing claims. When combined with the $10,300.34 previously identified by plaintiffs, this reduction totals $97,451.44 and reduces the fee request to $367,583.82.

A further reduction of the fee request is warranted to account for the fact that plaintiffs bear the burden of establishing the reasonableness of the hours billed. Plaintiffs have failed to show that the hours billed (after the few reductions they identified) are not solely attributable to the non-fee

bearing claims. The Court's line by line analysis of plaintiffs' billing records revealed some time clearly attributable to the non-fee bearing claims only. However, the Court's analysis was hampered by plaintiffs' block billing practices and imprecise time entries. See Okla. Natural Gas Co. v. Apache Corp., 355 F. Supp. 2d 1246, 1264 (N.D. Okla. 2004) ("block billing is a critical problem where, for example, plaintiff alleges claims for which fees may be shifted and others for which fee-shifting is not appropriate").

Plaintiffs object to the magistrate judge's across-the-board reduction for block billing. They argue that their billing practices do not constitute block billing. Dkt. # 255, at 22. They further argue that their post hoc reconstruction of billing records alleviated any unreliability due to the lack of detail in the time records they initially submitted. Id. at 23.

"The term 'block billing' refers to the 'time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" Robinson, 160 F.3d at 1285 n.9 (quoting Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1554 n.15 (10th Cir. 1996)). Attorneys are required to keep "meticulous time records that reveal . . . all hours for which compensation is requested and how those hours were allotted to specific tasks." Jane L. v. Bangerter, 61 F.3d 1505, 1511 (10th Cir. 1995) (quoting Ramos v. Lamm, 713 F.2d 546, 555 (10th Cir. 1983)). Block billing "naturally and quite correctly raise[s] suspicions about whether all the work claimed was actually accomplished or whether it was necessary. This concern is particularly important in a situation where a party is seeking to have [its] opponent pay for [its own] lawyer[s'] work." Robinson, 160 F.3d at 1284.

The time records that plaintiffs' counsel initially submitted with their fee application were rife with examples of block billing. For example, on July 7, 2007, WEG billed 7.70 hours for the

following: "[t]elephone meeting with D. Sisney and J. Legrand regarding factual investigation and preparation for oral argument on motion for TRO; exchange correspondence with H. White regarding stock purchase agreement between Metals, Inc. and Hughes, discuss best way to send copy of acquisition agreement; follow-up telephone conference with D. Sisney regarding factual investigation and preparation for TRO hearing; research and draft oral argument outline for TRO hearing; research and draft outline of legal argument for TRO hearing; receive and review filing by opposing counsel, noticing first appearance on behalf of defendants." Dkt. # 161-3, at 12. It is impossible to tell what portion of the 7.70 hours was spent on each separate task.

In response to defendants' argument that the initial fee request should reduced for block billing, plaintiffs submitted additional affidavits breaking down the time entries into specific tasks. Dkt. ## 183 - 194. Plaintiffs maintain that this post hoc reconstruction is reliable and alleviates any concerns raised by block billing. Although there is no per se rule against using reconstructed time records to support an attorney fee application, such reconstruction should be "based on other records which verify the activity in the case, such as the court file or the attorney's copies of letters, pleadings, or file memoranda." Usrey v. Wilson, 66 P.3d 1000, 1002 (Okla. Civ. App. 2003). The timekeepers reconstructed their billing records "to the best of their recollection." Dkt. ## 183-194; 215-3; see also Dkt. # 255, at 24. The magistrate judge found that plaintiffs' reconstructed time records were unreliable. Dkt. # 251, at 27. The Court finds that the timekeepers' mere recollections about the time spent on specific tasks, many of which were performed over one year before the reconstruction, are not reliable. Further, plaintiffs' unreliable reconstructed time records remain imprecise and made it impossible for the Court to apportion fees by reviewing the records line by line. Plaintiffs' objection to a reduction for block billing is overruled. The magistrate judge's

recommendation is accepted in part and rejected in part: it is accepted insofar as apportionment is appropriate and block billing should result in a reduction; it is rejected as to the size of the apportionment reduction and insofar as block billing was not included in the reduction for apportionment.

The Court finds that a fifty percent across-the-board reduction is warranted based on plaintiffs' failure to show that their fee request is reasonable and that all hours billed are attributable to the fee bearing claims. Plaintiffs' objections regarding apportionment are granted insofar as they relate to the size of apportionment. This further reduces the fee request to $183,791.91.

D. Application of Burk Factors

The magistrate judge considered each of the Burk factors and determined that no further adjustment to the fee award was warranted, but that the Burk factors provided additional support for the reductions already made. Dkt. # 251, at 31-32. Even though it did not affect the amount awarded, plaintiffs object to the analysis of several factors. Dkt. # 255, at 26. The Burk factors are:

> the time and labor required; novelty and difficulty of the questions; skill requisite to perform the legal service; preclusion of other employment; customary fee; whether the fee is fixed or contingent; time limitations; amount involved and results obtained; experience, reputation and ability of the attorneys involved; nature and length of relationship with client; and awards in similar causes.

Spencer, 171 P.3d at 895.

1. Complexity of the Case

The magistrate judge determined that this factor did not warrant a change in the recommended fee. Plaintiffs object, arguing that this case was complex. Dkt. # 255, at 26-27. It was not. Even though the case involved multiple claims and multiple defendants, the claims

centered around a common set of facts.[10] As the magistrate judge noted, the case was concluded in less than fourteen months, including a trial that lasted less than three days with only eleven witnesses. Dkt. # 251, at 7. Much of the claimed "complexity" of this case was created by plaintiffs, including their failure to demand a jury trial and provide an expert report for their damages expert, and their decision to file a second motion for preliminary injunction the day of the dispositive motion cutoff. Id.; Dkt. # 85, at 1. Further, although plaintiffs are correct that trade secrets cases are often complex, the trade secrets at issue in this case were pricing methods that did not require technical expertise to understand.[11] The complexity of the case warrants no further adjustment to the attorney fee award.

2. Customary Fee

The magistrate judge determined that this factor weighed against plaintiffs because they provided no evidence that their fee application was anything but typical. Dkt. # 251, at 29. Plaintiffs "object to the finding that this . . . factor is anything but neutral." Plaintiffs cite McKissick v. Gemstar-TV Guide Int'l, Inc., No. 04-CV-262-JHP-SAJ, 2007 WL 1072209 (N.D. Okla. March 30, 2007), in support of the reasonableness of their fee application. In that case, the defendants were awarded $216,000 in attorney fees. In this case, plaintiffs initially sought $523,739.26 in fees and have filed three supplements requesting an additional $185,558.55, for a total of $709,297.81 to

---

[10] The claims centered around a common set of facts, but not all facts were relevant to all claims, nor was all legal work attributable to all claims. Therefore, apportionment of the fee is appropriate. See Part II.C, supra.

[11] Plaintiffs attempt to characterize the case as complex because it involved "complex noncompetition and related tort claims . . . ." Dkt. # 255, at 27. Plaintiffs do not mention the claims relating to the employment agreements and acquisition agreement, which were straightforward, of little merit, and disposed of on summary judgment. Dkt. # 136.

date. Dkt. ## 214-2, 237-2, 264. The Court fails to see how an attorney fee award in McKissick of $309,756.26 less than plaintiffs' initial application supports the contention that plaintiffs' fee application in this case is reasonable or customary. The Court finds that this factor does not require additional adjustment to the fee award in this case.

3. Amount Involved and Results Obtained

The magistrate judge found that this factor weighed against plaintiffs because their request of $523,739.26 was "more than sixteen times the amount of their recovery of $31,380, and their recovery is overwhelmingly less than the $2.3 million in damages they sought." Dkt. # 251, at 29. Plaintiffs maintain that they "obtained excellent results" because they prevailed on a majority of their claims, proved some damages, and secured an injunction which was "the primary relief Plaintiffs sought in the case." Dkt. # 255, at 30. Although it is true that the injunction cannot be assigned a dollar value, it is also true that the injunction was far less substantial than the one plaintiffs sought. Further, plaintiffs' inability to prove damages at trial was due to plaintiffs' counsel's failure to provide an expert report and subsequent exclusion of plaintiffs' damages expert. Therefore, some part of plaintiffs' lack of success was directly attributable to counsel's errors. This factor weighs against plaintiffs in this case. However, an additional reduction is not warranted, as reductions for duplicative and unnecessary work and apportionment have already accounted for this consideration.

4. Experience, Reputation, and Ability of Plaintiffs' Attorneys

The magistrate judge determined that this factor weighed against plaintiffs because of counsel's questionable staffing decisions. Dkt. # 251, at 30-31. Plaintiffs did not object to the elimination of ten out of twenty-two timekeepers. Dkt. # 255, at 32. They assert that considering

this factor a second time serves as an improper penalty. Id. However, the consideration of this factor under Burk did not result in any further adjustment to the fee award; therefore, it did not penalize plaintiffs.

The Court finds that the Burk factors do not warrant a further adjustment to the lodestar fee, but that they provide support for the conclusion that the revised lodestar fee is reasonable. Plaintiffs' objections to the application of the Burk factors are overruled, and this portion of the magistrate judge's report and recommendation is accepted.

E. Trial Fees Award

The adjusted fee is calculated as follows:

| | | |
|---|---|---|
| Initial request: | | $523,739.26 |
| Reduction for eleven timekeepers and expert discovery, per Dkt. # 251: | $58,704.00 | |
| Specific reductions for apportionment among fee bearing and non-fee bearing claims: | $97,451.44 | |
| Subtotal: | $367,583.82 | |
| 50% reduction for apportionment, hampered by block billing ($367,583.82 x 0.5 = $183,791.91) | $183,791.91 | |
| Trial-level attorney fee award: | | $183,791.91 |

"In all cases, the attorney fees must bear some reasonable relationship to the amount in controversy." Spencer, 171 P.3d at 895. The Oklahoma Supreme Court has never identified a percentage of the amount in controversy above which an attorney fee award would be unreasonable per se. Finnell v. Seismic, 67 P.3d 339, 347 (Okla. 2003). In Arkoma Gas Co. v. Otis Engineering Corp., 849 P.2d 392 (Okla. 1993), the Oklahoma Supreme Court upheld an attorney fee award of

$5,500 where the damages sought were in excess of $70,000, and the plaintiff received a judgment of $100. In Southwestern Bell Telephone Co. v. Parker Pest Control, Inc., 737 P.2d 1186 (Okla. 1987), the Oklahoma Supreme Court awarded $3,000 in attorney fees where the plaintiff received a judgment of $1,500 on a claim for $3,867. The attorney fee award in this case is within a range deemed acceptable by Oklahoma caselaw and is reasonably related to the amount in controversy.

F. Fees on Fees

Plaintiffs object to the magistrate judge's reduction of their applications for fees associated with litigating their initial fee application, or fees on fees. Plaintiffs' Substituted Supplement to Motion for Award of Attorney Fees (Dkt. # 214-2) requests $110,290.30 for fees on fees incurred through February 20, 2009.[12] Plaintiffs' Second Supplement to Motion for Award of Attorneys' Fees and Non-Taxable Costs (Dkt. # 237-2) seeks an additional $49,473.60[13] for fees incurred through November 20, 2009. Plaintiffs' Third Supplement Regarding Trial-Level Fees (Dkt. # 264) seeks an additional $25,794.65. The total fees on fees request is $185,558.55.

The magistrate judge characterized the substituted supplement as "entirely unreasonable" and recommended that plaintiffs be awarded ten percent of the fee award he calculated for trial fees. Dkt. # 251, at 35. With regard to the second supplement, he determined that plaintiffs were entitled to their fees associated with monitoring compliance with the injunction, but recommended that the remainder of the fees requested in the second supplement be denied. Id. at 36-37. Plaintiffs object

---

12 The substituted supplement includes fees for all counsel through February 19, 2009, and fees for work performed by local counsel through February 20, 2009. The second supplement includes fees incurred from February 20, 2009 for lead counsel and fees incurred after that date for all counsel. Dkt. # 255, at 35.

13 Plaintiffs requested leave to file a third supplement, which the Court granted. Dkt. ## 261, 262. The third supplement was not referred to the magistrate judge.

to the reduction of fees on fees. Plaintiffs' request of $185,558.55 for litigating one fee application and monitoring a one year, eight county injunction is patently unreasonable. This request is more than the fees awarded in connection with the initial fee application. Plaintiffs' supplemental fee applications reflect counsel's persistent over-staffing of the case, inefficiency, and lack of billing judgment.

However, plaintiffs are entitled to some compensation for reasonable time and effort spent in petitioning for a fee. Burk, 598 P.2d at 663. Like the trial-level attorney fees, plaintiffs have the burden of establishing the reasonableness of their supplemental fee requests. The Court employs the same analysis used to assess the reasonableness of the initial fee application to assess the reasonableness of the supplemental fee applications.

1. Substituted Supplement

In the substituted supplement, plaintiffs seek $110,290.30 in fees incurred between July 17, 2008 and February 20, 2009. Dkt. # 214-2. This is equal to over twenty percent of the fees plaintiffs sought for the entire trial, and over sixty percent of the fees to which they are entitled. See Part II.E, supra. Plaintiffs object to the magistrate judge's reduction of fees on fees based on a percentage of the initial fee award. This objection is sustained, and the magistrate judge's report and recommendation regarding the substituted supplement is rejected.

Plaintiffs' requests for fees associated with issues regarding the reasonableness of attorneys' rates and discussing settlement are reasonable and should be awarded. Further, plaintiffs fees associated with the issue of whether counsel's rates would be litigated are reasonable and should be awarded.

Plaintiffs seek $9,530.80 for 35.4 hours expended in enforcing the final judgment and injunction. Dkt. # 214-2, at 4. Plaintiffs are entitled to their reasonable fees associated with monitoring the injunction. However, not all fees identified by plaintiffs are reasonable. For example, seven different timekeepers billed time for reviewing the final judgment and injunction. This is entirely excessive, and reflects counsel's persistent over-staffing of this case and a lack of billing judgment. The Court finds plaintiffs are entitled to half the fees sought in connection with monitoring the injunction. This reduces the substituted supplement by $4,765.40, to $105,524.90.

Plaintiffs seek $73,350 for 296.6 hours expended in connection with preparing the Motion for Award of Attorneys' Fees and Nontaxable Costs, Reply, and Bill of Costs. This includes the work of thirteen timekeepers, including six partners, one local counsel, three associates, and three paralegals. This is entirely excessive. Dinita L. James (DLJ) was the partner who expended the most hours on the fee application, and argued the motion for attorney fees before the magistrate judge. The Court finds that it was unnecessary to have an additional five partners working on the motion for attorney fees, and that their time should be stricken.[14] This reduces the requested fees by $6,825.20, to $98,699.70. Further, the Court finds that the work of Kylie B. Crawford (KBC) and Dominic L. Verstegen (DLV) was partially duplicative because DLV conducted research for and drafted plaintiffs' reply in support of the motion while KBC was out of the office. KBC drafted the initial brief. Dkt. # 214-2, at 2. If one associate had been responsible for drafting both documents, significant time would have been saved. One quarter of KBC's time and half of DLV's time should be stricken. This reduces the requested fees by $9,546.25, to $89,153.45.

---

[14] Further, much of the stricken partner time was billed in connection with preparing the supplemental affidavits regarding reconstructed time records. Defendants should not be responsible for this time. <u>See</u> <u>infra</u>.

All time billed in connection with preparing revised affidavits and reconstructing time records should be stricken. This was a task of plaintiffs' own making, for which defendants should not have to pay. Accounting for time already stricken, supra, this reduces the requested fees by $10,288, to $78,865.45.

DLJ billed 104.5 hours for motion practice, 19.3 of which were billed in connection with the supplemental affidavits and is stricken. See supra. DLJ spent roughly the same amount of time on motion practice as KBC and DLV spent, combined (and duplicating efforts), drafting the motions and briefs. It is clear that DLJ billed an excessive amount of time, either due to duplication of efforts or inefficiency. The Court finds that DLJ's remaining motion practice time should be reduced by fifty percent. This reduces the requested fees by $12,268.80, to $66,596.65.

Five timekeepers billed $7,678 for 43.4 hours spent locating and organizing time records and invoices. Defendants should not have to pay for plaintiffs' counsel's lack of organization. The Court finds that plaintiffs are entitled to ten hours of paralegal time and two hours of associate time for this task, equal to $2,144. This reduces the requested fees by $5,534, to $61,062.65.

These reductions to the requested fees for motion practice are appropriate, especially given the fact that there are numerous individual time entries that are clearly not compensable, e.g., billing for research on whether fees associated with the expert are recoverable, that have not been stricken.

Plaintiffs request $12,929.70 for 45.9 hours billed in connection with the initial fee hearing. As the magistrate judge noted, this hearing was a two hour presentation of arguments, with no evidence or witnesses. Dkt. ## 211; 220, at 33. The amount of time counsel expended in preparing for the hearing is excessive, especially given the fact that the issues had been extensively researched

and briefed prior to the hearing. Plaintiffs are entitled to one third of the fees sought in connection with the first fee hearing. This reduces the amount requested by $8,619.80, to $52,442.85.

Plaintiffs request $11,973.50 for 55.7 hours billed in connection with preparing the substituted supplement. The excessive number of hours is due, again, to time spent locating and organizing time records, duplication of efforts, excessive staffing, and inefficiency. The Court finds that one hour of DLJ's time, two hours of associate time, and four hours of paralegal time are a reasonable number of hours for the substituted supplement. This is equal to $1,442. Therefore, the fee request should be reduced by $10,531.50, to $41,911.35.

The time records plaintiffs submitted with their substituted supplement were not broken down by individual task. Dkt. # 214-2. Plaintiffs filed a "Motion for Leave to Supplement Contemporaneous Time Records" (Dkt. # 215), which broke the time records into specific tasks. This was, again, a post hoc reconstruction. Id. The Court finds that these time records are unreliable, for the same reasons as the initial application records. See Part II.C, supra. Further, the Court is perplexed by plaintiffs' decision to file two sets of time records on the same date (one broken down, one not) after the first report and recommendation regarding the fee application (Dkt. # 220), which was entered many months earlier, disapproved of plaintiffs' counsel's block billing practices. Because plaintiffs' billing practices make it difficult to determine the time spent on

individual tasks, and plaintiffs have failed to establish the reasonableness of their fee request, the Court finds that a further thirty percent across-the-board reduction is appropriate.[15]

In summary, plaintiffs are entitled to fees pursuant to the substituted supplement calculated as follows:

| | | |
|---|---|---|
| Requested amount: | | $110,290.30 |
| Reductions: | | |
| Injunction enforcement | $4,765.40 | |
| Partner billing for motion practice | $6,825.20 | |
| Duplicative associate billing for motion practice | $9,546.25 | |
| Preparation of supplemental affidavits | $10,288.00 | |
| Reduction of DLJ's motion practice time | $12,268.80 | |
| Organization of records | $5,534.00 | |
| Fee hearing | $8,619.80 | |
| Preparation of substituted supplement | $10,531.50 | |
| Reductions subtotal | $68,378.95 | |
| Reduced amount | $41,911.35 | |
| Thirty percent reduction for block billing ($41,911.35 x 0.30 = $12,573.41) | $29,337.94 | |
| Fee Award pursuant to Substituted Supplement | | $29,337.94 |

15 In Part II.C, supra, the Court found that a fifty percent across-the-board reduction was appropriate to account for block billing based on the need to apportion fees among fee bearing and non-fee bearing claims, which is not an issue with respect to the substituted supplement. Therefore, a thirty percent across-the-board reduction to the substituted supplement is appropriate to account for plaintiffs' failure to establish the reasonableness of the substituted supplement and the Court's inability to fully assess the requested fees, caused by block billing and imprecise time entries.

2. Second Supplement

Plaintiffs' Second Supplement to Motion for Award of Attorneys's Fees and Non-Taxable Costs seeks an additional $49,473.60 in fees incurred between February 20, 2009 and November 20, 2009. Dkt. # 237-2, at 2.

The magistrate judge reviewed the second supplement in detail and recommended that the 107.7 hours and $25,458 of fees incurred in connection with revising time sheets that were block billed and preparing a brief on the apportionment issue be stricken. Dkt. # 251, at 37. The Court agrees. Plaintiffs' contention that their fees associated with the apportionment issue are reasonable is without merit. Plaintiffs' litigation position was contrary to established law, which clearly requires apportionment of fees. Further, plaintiffs' meager effort to apportion their fees was unhelpful, as the Court identified numerous additional time entries that were clearly related to non-fee bearing claims only. See Part II.C, supra.

The magistrate judge also recommended that the 75.5 hours and $16,920.80 in fees incurred in connection with filing plaintiffs' objections to the first report and recommendation be stricken because those objections did not affect his analysis in the report and recommendation. The Court finds that plaintiffs are not entitled to any fees in connection with preparing their objections because plaintiffs have taken a consistently unreasonable position regarding fees. Plaintiffs should not be compensated for preparing objections in support of their patently unreasonable fee application.

In light of the fact that plaintiffs have already been awarded $4,765.40 for monitoring the injunction, the additional amount requested in the second supplement is unreasonable and will not be awarded. The $4,765.40 is adequate to compensate plaintiffs for fees associated with monitoring

the modest injunction. Thus, plaintiffs' objections to this portion of the report and recommendation are overruled, and the report and recommendation is accepted in part and rejected in part.

3. Third Supplement

Plaintiffs' Third Supplement Regarding Trial-Level Fees seeks an additional $25,794.65 in attorney fees incurred after November 20, 2009. Dkt. # 264. Plaintiffs' supplements demonstrate an unwillingness or inability to staff this matter efficiently or to exercise billing judgment to reduce their fees-on-fees requests to reasonable amounts.[16] They also demonstrate that this practice will continue as long as litigation over fees continues.[17] The Court has already awarded plaintiffs $29,337.94 for litigating the fee application and monitoring compliance with the injunction. Plaintiffs have been awarded a total of $213,129.85 in trial-level attorney fees. Taking into account all the factors and considerations discussed supra, the Court finds that this amount is adequate to compensate plaintiffs' counsel for trial litigation and the litigation of the trial-level fee application. Therefore, plaintiffs will not be awarded any fees in connection with their third supplement and will not be permitted to file any additional supplements seeking attorney fees associated with trial. This does not deprive plaintiffs of the benefit of the bargain struck in the noncompetition agreements. That bargain was for reasonable fees. Plaintiffs have attempted to abuse and overstep their contractual entitlement to such fees.

---

16 For example, plaintiffs seek significant fees in association with their objections to the report and recommendation. Plaintiffs already filed a substantially similar set of objections to the first report and recommendation (Dkt. # 221). The additional expenditure of time is largely duplicative and inefficient. See n. 15, supra.

17 The litigation has become significantly protracted in part due to plaintiffs' counsel's decisions.

G. Costs

Plaintiffs seek $20,012.92 in non-taxable costs. Plaintiffs have already been awarded $18,937.71 in taxable costs. Dkt. # 199. The magistrate judge recommended that non-taxable costs not be awarded because he determined that the noncompetition agreements do not provide for the recovery of costs in excess of those recoverable under the applicable federal rules and statutes. Dkt. # 251, at 39.

The noncompetition agreements provide for "reasonable attorneys' fees and costs (including paralegals' fees) incurred at trial . . . ." Dkt. # 69-3, at 46. Oklahoma follows the American Rule regarding costs. See Rout v. Crescent Public Works Auth., 878 P.2d 1045, 1049 (Okla. 1994) ("[t]here is no common-law right permitting recovery of expenses of litigation. If any right exists, it must be statutory"). Thus, plaintiffs have the burden of establishing their entitlement to non-taxable costs. Plaintiffs cite several cases from other jurisdictions that construe contractual language different from that at issue here in support of their argument. Dkt. # 255, at 40-41. Those cases are unpersuasive here.[18] The magistrate judge determined that the word "cost," standing alone, "would reasonably lead one to the definition of costs used within the applicable statutory framework." Dkt. # 251, at 39. Plaintiffs offer no support for their assertion that this conclusion "shows a remarkable detachment from the commercial world." Dkt. # 255, at 36. It is entirely reasonable to assume that the parties intended "costs" to mean what "costs" normally means in litigation: costs awardable pursuant to statute. Notably, plaintiffs have offered no alternative definition of costs, other than the

---

[18] Plaintiffs' reliance on Scottsdale Insurance Co. v. Tolliver, 262 F.R.D. 606 (N.D. Okla. 2009), is misplaced. In that case, the Court discussed a Colorado statute authorizing costs in excess of what would have been permitted under federal law in the context of determining whether federal or state law controlled the award of costs in a diversity case. Id. at 611.

assertion that the term includes the items they claim as costs. Dkt. # 255, at 40. This is circular and unhelpful. The Court finds that the noncompetition agreements do not provide for the award of costs in excess of taxable costs. This portion of plaintiffs' objections are overruled and this portion of the magistrate judge's report and recommendation is accepted.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 251) is **accepted in part** and **rejected in part**, as more fully described herein. Plaintiffs' Objections to the Magistrate Judge's Report and Recommendation Regarding Trial-Level Attorneys' Fees (Dkt. # 255) is **granted in part** and **overruled in part**, as more fully described herein.

**IT IS FURTHER ORDERED** that plaintiffs' Motion for Award of Attorneys' Fees and Nontaxable Costs (Dkt. # 161) is **granted in part** and **denied in part**, as more fully described herein. Plaintiffs shall be awarded $213,129.85 in trial-level attorney fees and no non-taxable costs. A separate judgment for attorney fees shall be entered herewith.

**DATED** this 13th day of April, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT